**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| BENJAMIN LOPEZ, OSCAR CARLOS LOPEZ RAMIREZ, and RAMONA REYES SAUCEDO, | § § § § | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | § | |
| v. | § § | Civil Action No: 1:22-CV-00484 |
| MASTRONARDI PRODUCE-USA, INC., and MAROA FARMS, INC., | § § | JURY TRIAL DEMANDED |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**

1.      Plaintiffs Benjamin Lopez, Oscar Carlos Lopez Ramirez, and Ramona Reyes Saucedo bring this class action on behalf of themselves and other similarly situated migrant and seasonal farmworkers who worked for Maroa Farms, Inc. ("Maroa Farms"), and Mastronardi Produce-USA, Inc. ("Mastronardi") (collectively "Defendants") in Defendants' greenhouses located in Coldwater, Michigan.

2.      Beginning in 2020, Defendants violated multiple provisions of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801-1872, and state common law by mishandling and failing to protect Plaintiffs and putative class members from the pesticides being used in Defendants' greenhouses in violation of the Worker Protection Standard ("WPS"); violating Michigan Occupational Safety and Health Agency ("MIOSHA") standards; and using a false and misleading bonus structure that caused Plaintiffs and class members to work faster and harder without being justly compensated. Plaintiff Ramona Saucedo Reyes also asserts an individual cause of action for Defendants' failure to pay overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Improved Workforce Opportunity Wage

Act (IWOWA), Mich. Comp. Laws § 408.931 *et seq.*, while she was employed in non-agricultural work in Defendants' sanitation department.

3.      Plaintiffs and their similarly situated class members seek redress from Defendants jointly and severally for Defendants' violations of law, in the form of statutory or actual damages under the AWPA, actual damages for Defendants' contract violation, and actual and liquidated damages plus reasonable attorneys' fees and costs for Defendants' violations of the FLSA and IWOWA.

## JURISDICTION AND VENUE

4.      The Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 (federal question), the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1854(a) *et seq.*, and the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*), 29 U.S.C. § 216(b).

5.      Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the Michigan state law claims asserted by Plaintiffs, on behalf of themselves and others similarly situated, as these claims are so related to the federal claims that they form part of the same case or controversy.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) as this is the judicial district where Defendants reside and in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

### Named Migrant Worker Plaintiffs

7.      Plaintiff Benjamin Lopez ("Plaintiff Lopez" or "Mr. Lopez") is a migrant farmworker who currently resides in Georgia.

8.      At all times relevant to this Complaint, Plaintiff Lopez was a migrant agricultural worker pursuant to the AWPA 29 U.S.C. § 1802 (8) and 29 C.F.R. § 500.20(p).

9.      In 2020, while in North Carolina, Plaintiff Lopez was recruited to work for Defendants at their Coldwater greenhouse facility by Defendants, through Defendants' farm labor contractor Martinez & Sons Labor Contractors, LLC (hereinafter "Martinez & Sons").

10.      Plaintiff Lopez worked for Defendants at their Coldwater greenhouse facility as a greenhouse worker for one season, from approximately the end of August 2020 to February 2021, where he primarily worked performing hand labor on tomato plants, including de-leafing and picking, and sanitizing equipment used for cultivation.

11.      While working for Defendants in Coldwater, MI, Plaintiff Lopez maintained a permanent place of residence is in Mexico.

12.      Defendants housed Plaintiff Lopez at the migrant housing facility owned and operated by Defendant Maroa Farms located at 270 N. Fillmore, Coldwater, Michigan 49036.

13.      Plaintiff Oscar Carlos Lopez Ramirez ("Plaintiff Lopez Ramirez" or "Mr. Lopez Ramirez") is a migrant farmworker who currently resides in Mexico.

14.      At all times relevant to this Complaint, Plaintiff Ramirez Lopez was a migrant agricultural worker pursuant to the AWPA 29 U.S.C. § 1802 (8) and 29 C.F.R. § 500.20(p).

15.      In 2019 and 2020 Plaintiff Lopez Ramirez was recruited to work for Defendants at their Coldwater greenhouse facility by Defendants' farm labor contractor Martinez & Sons.

16.      Plaintiff Lopez Ramirez worked for Defendants at their Coldwater greenhouse facility as a greenhouse worker for two seasons, from approximately November 2019 to June 2020 and from approximately September 2020 to June 2021, where he primarily worked

3

performing hand labor on tomatoes, strawberries, and cucumbers, including de-leafing and
harvesting and was engaged in sanitization of equipment used for cultivation.

17.     While working for Defendants in Coldwater, MI, Plaintiff Lopez Ramirez
maintained a permanent place of residence in Florida.

18.     Defendants did not provide Plaintiff Lopez Ramirez or his family members
housing at the migrant housing facility owned and operated by Defendant Maroa Farms in
Coldwater, Michigan.

19.     At all times relevant to this action, Plaintiffs Lopez and Lopez Ramirez were
employed in agricultural employment under AWPA, 29 U.S.C. § 1802(3) and 29 C.F.R.
§500.20(e), in that they were employed in the production, cultivation, growing, and harvesting of
agricultural or horticultural commodities and/or in work incident to or in conjunction with
Defendants' growing operations, including preparation for market.

**Named Seasonal Worker Plaintiff**

20.     Plaintiff Ramona Reyes Saucedo ("Plaintiff Reyes Saucedo" or "Ms. Reyes
Saucedo") is a resident of Michigan.

21.     Plaintiff Reyes Saucedo worked for Defendants at their Coldwater greenhouse
facility as a seasonal greenhouse worker from approximately 2014 to approximately August 15,
2020, where she primarily performed hand labor on tomato, strawberry and cucumber plants,
including removing flowers and picking and pruning the various plants.

22.     During this time, Plaintiff Reyes Saucedo was a seasonal agricultural worker
within the meaning of the AWPA 29 U.S.C. §1802(10).

23.     During this time, Plaintiff Reyes Saucedo was employed in agricultural
employment under the AWPA, 29 U.S.C. § 1802(3) and 29 C.F.R. §500.20(e), in that she was

4

employed in the production, cultivation, growing, and harvesting of agricultural or horticultural commodities and/or in work incident to or in conjunction with Defendants' growing operations, including preparation for market.

24.    During this time, Plaintiff Reyes Saucedo was employed in work of a seasonal or temporary nature under AWPA.

25.    For example, Defendants assigned Plaintiff Reyes Saucedo to different types of work with different crops, based on Defendants' planting and harvesting seasons at the Coldwater facility.

26.    Plaintiff Reyes Saucedo's work hours also fluctuated from approximately 10 to 70 hours a week based on Defendants' planting and harvesting seasons at the Coldwater facility.

27.    Defendants' hiring paperwork indicated that Plaintiff Reyes Saucedo's hours could vary day to day, week to week, season to season and that she may experience long intervals without work with minimal advance warning.

28.    Defendants have attested to the Department of Labor that they have seasonal labor needs for crop-related activities, in seeking to hire H-2A temporary agricultural visa workers, including that from 2016-2019 they had a seasonal need from February through December, and that in December they changed their crop cycle creating a seasonal need from August to June.

29.    On or about, August 16, 2020, Defendants hired Plaintiff Reyes Saucedo as a sanitation worker in Defendants' sanitation department.

30.    Plaintiff Reyes Saucedo worked for Defendants as a sanitation worker until approximately December 3, 2020.

31.     During her time as a sanitation worker, Plaintiff Reyes Saucedo was not an agricultural worker and was not subject to the agricultural exemptions to the FLSA overtime provisions, as defined in 29 U.S.C. §213(a)(6), (b)(12) and 29 C.F.R. § 780.

### Defendants

32.     Defendant Mastronardi Produce-USA, Inc. ("Mastronardi Produce-USA") is a wholly owned subsidiary of the Canadian company, Mastronardi Produce Ltd., which markets and sells Mastronardi Produce-USA's fruits and vegetables throughout the United States and internationally under the "Sunset" brand.

33.     Upon information and belief Mastronardi Produce-USA maintains its headquarters and largest distribution center in Livonia, Michigan.

34.     Upon information and belief Mastronardi Produce-USA has several wholly owned subsidiary farming operations in the United States, one of which is Maroa Farms, Inc.

35.     Defendant Maroa Farms, Inc. ("Maroa Farms") is a Michigan foreign, for-profit corporation qualified to operate in Michigan in 2011, and incorporated in the state of Illinois.

36.     Defendants operate greenhouses at 270 N Fillmore Rd., Coldwater, MI, 49036 (hereinafter the "Coldwater Facility") where they produce hydroponically grown tomatoes, cucumbers, and strawberries.

37.     Maroa Farms owns and operates barracks-style migrant housing next to the Coldwater Facility and at the same address, 270 N. Fillmore, Coldwater, Michigan 49036.

38.     Mastronardi Produce-USA and Maroa Farms are a single employer under FLSA and AWPA as they are an integrated enterprise.

39.     Defendants share the same officers and directors, including President Paul Mastronardi, Treasurer Marne Safrance, Secretary David Einstanding, and Director Donald Mastronardi.

40.     Mastronardi publicly refers to Maroa Farms as its facility and that it is engaged in growing Mastronardi's produce, and that it uses Mastronardi's growing methods.

41.     Mastronardi's Chief Growing Officer represented in a sworn affidavit in 2020 that she is in frequent communication with the Maroa Farms Head Grower and familiar with Maroa Farms labor needs.

42.     Upon information and belief, Maroa Farms uses Mastronardi's branding, such as the "Sunset" label on its produce.

43.     Mastronardi has a "Careers at Sunset" page where it has posted jobs for Maroa Farms for positions such as Crop Care Supervisor and Summer Greenhouse Intern. Mastronardi's job postings have referred to "[o]ur Maroa Farms facility" and references Mastronardi Produce's accommodation processes and policies as applicable to the Maroa Farms job.

44.     Upon information and belief, Maroa Farms uses Mastronardi's Sunset-branded systems and equipment at the Coldwater Facility.

45.     At all times relevant to this Complaint, Defendants were employers of Plaintiffs under FLSA, 29 U.S.C. § 203(d) and (g) and AWPA, 29 U.S.C. § 1802 (5), and determined the terms and conditions of Plaintiffs' employment, including their, bonuses, work hours, schedules, manner of performance, and timekeeping, among other essential functions of an employer.

46.     Defendants are and at all relevant times were an enterprise within the meaning of FLSA, 29 U.S.C. § 203(r), because they operate and have operated for a business purpose, specifically, growing, harvesting and packing produce for sale.

47.     Defendants are and at all relevant times were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of FLSA, 29 U.S.C. § 203(s)(1)(A).

48.     Specifically, at all relevant times, Defendants' employees regularly and recurrently handled or otherwise worked on goods moved in or produced for commerce, including but not limited to growing, harvesting, and packing tomatoes, strawberries, and cucumbers for sale; and Defendants' annual gross volume of sales or business was not less than $500,000.

49.     At all times relevant to this action, Defendants were agricultural employers under AWPA, 29 U.S.C. § 1802(2), in that they owned or operated a farm, packing shed and/or nursery, and hired and employed the Plaintiffs and others as migrant or seasonal agricultural workers.

## GENERAL FACTUAL ALLEGATIONS

### Defendants Employed Plaintiffs and the Greenhouse Workers at the Coldwater Facility

50.     Every year, Defendants employ over 200 workers to perform crop-related activities in their Coldwater Facility greenhouses, which include over two million square feet of indoor greenhouse space.

51.     Defendants refer to their Coldwater Facility greenhouses as "Phase 1," "Phase 2," and "Phase 3." Phase 1 is contained within one structure of the Coldwater Facility. Phases 2 and

3 are contained within a separate structure of the Coldwater Facility and are connected to Phase 1 by a corridor.

52.     During the relevant time periods, Defendants have grown and harvested tomatoes in Phases 1 and 2 and have grown and harvested strawberries and cucumbers in Phase 3.

53.     Defendants have directly recruited and hired workers and used farm labor contractors to recruit and hire workers, to work growing and harvesting crops in the Coldwater Facility (hereinafter the "greenhouse workers").

54.     Plaintiffs, along with the other Coldwater Facility greenhouse workers, worked under Defendants full control and supervision regardless of whether they were recruited and hired through one of Defendants' farm labor contractor agents, or directly by Defendants.

55.     Defendants have directly trained and supervised Plaintiffs and Phases 1, 2, and 3 greenhouse workers including providing daily instruction and review of their work.

56.     Defendants have made all decisions related to Plaintiffs' and the greenhouse workers' job assignments, which have included what location, crop and rows they would be assigned to work in, and what specific tasks they would be assigned to complete.

57.     Defendants have assigned Plaintiffs and the greenhouse workers their work schedules including controlling their starting and stopping times.

58.     Defendants have tracked the number of hours Plaintiffs and greenhouse workers have worked using electronic identification cards.

59.     Defendants have set and have enforced production standards for Plaintiffs and greenhouse workers and tracked each worker's piece rate for all crop-related tasks.

60.     Defendants have determined Plaintiffs' and the greenhouse workers' bonus piece rates.

61.     Defendants have controlled the environmental conditions inside the Coldwater Facility greenhouses, including the temperature, humidity, light, and air quality.

62.     Defendants have controlled which locations of the Coldwater Facility Plaintiffs and greenhouse workers were permitted to enter on a given day.

63.     Defendants have established policies and procedures for entering each greenhouse, including what Plaintiffs and greenhouse workers have been permitted to wear inside the Coldwater Facility greenhouses.

64.     Defendants have directed the handling and administration of pesticides, including regulated disinfectants, at the Coldwater Facility, including their labeling, and tracking.

65.     Defendants have been responsible for following the requirements of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") in relation to their use of pesticides, including regulated disinfectants, which includes meeting all applicable requirements of the Worker Protection Standard ("WPS") 40 C.F.R. Part 170.

66.     Defendants have been responsible for hazard communications, training and notifying workers regarding the use of pesticides at the Coldwater Facility.

67.     Defendants have been responsible for the provision of personal protective equipment (PPE), including testing and fitting of PPE, at the Coldwater Facility.

68.     Defendants have been responsible for providing medical transportation for workers injured by exposure to pesticides.

69.     Defendants have been responsible for providing Plaintiffs and greenhouse workers access to potable and cool drinking water at the Coldwater Facility, pursuant to the MIOSHA field sanitation standards. Mich. Comp. Laws § 408.1014n.

70.     Defendants have been responsible for ensuring the Coldwater Facility was a

"place of employment that is free from recognized hazards that are causing, or are likely to

cause, death or serious physical harm to the employee" pursuant to the MIOSHA general duty

clause, Mich. Comp. Laws § 408.1011(a).

## **Defendants' Use of Harmful Pesticides**

71.     Defendants have utilized "Integrated Pest Management" techniques in the

Coldwater Facility greenhouses, which includes disinfection of plant troughs, trays, tools,

containers, equipment, floors, and other surfaces throughout the greenhouse to manage pests and

plant pathogens such as viruses and bacteria that can cause diseases in plants.

72.     Defendants have directed regular sanitizing of equipment and tools that are in

daily contact with the tomato plants

73.     At the end of each tomato harvest, Defendants also have directed greenhouse

workers to prepare for the new tomato plants by disinfecting all the growing areas, equipment,

and tools, including troughs, trays, trolleys, carts, trimmers, and knives.

74.     Many of the chemicals used to disinfect at the Coldwater Facility are regulated by

the Environmental Protection Agency ("EPA") as pesticides under the FIFRA.

### Defendants Increased Use of Disinfectant Pesticides in the 2020-2021 Season

75.     During the 2020-2021 tomato season, Defendants increased disinfection practices

in the Coldwater Facility and told workers this was to prevent the spread of a tomato virus.

76.     Defendants began requiring that Plaintiffs and the greenhouse workers be

fingerprinted, telling them it was to track their movement to other Mastronardi greenhouses to

prevent the spread of the tomato virus.

77.     In or around August 2020, Defendants began instructing Plaintiff Lopez and other greenhouse workers in the Coldwater Facility to spray disinfectant daily, on the trolleys and carts used in each row of tomato plants.

78.     Plaintiff Lopez Ramirez and other greenhouse workers were instructed to continue working in the same rows while disinfectant was being sprayed.

79.     Upon information and belief, the disinfectant Plaintiff Lopez and other greenhouse workers were spraying on trolleys and carts was Virkon S.

80.     Virkon S is a broad-spectrum disinfectant and virucide and is registered with the EPA as a pesticide.

81.     The Safety Data Sheet ("SDS") for Virkon S indicates it can cause serious eye damages, skin irritation and respiratory irritation, and that it should only be used with appropriate Personal Protective Equipment (PPE), including chemical splash goggles and/or face shield and protective clothing, protective gloves, and protective footwear.

82.     The SDS for Virkon S further indicates it should only be used with adequate ventilation, that if airborne concentrations exceed standards, a NIOSH approved air-purifying particulate respirator with N-95 filters should be used, and that if inhalation hazards exist, a full-face respirator may be required.

83.     Plaintiffs Lopez and Lopez Ramirez and the greenhouse workers were also directed to disinfect tools, trays and gloves in tubs of bleach.

<u>2020-2021 Phase 2 Disinfection</u>

84.     In the Phase 2 greenhouse of the Coldwater Facility, Defendants were aware of the presence of the tomato virus as early as July 2020.

85.     Approximately 60 greenhouse workers worked in Phase 2 during the 2020-2021 season.

86.     In or around November 2020, Plaintiffs and the greenhouse workers frequently began to smell the strong odor of bleach throughout Phase 2 of the Coldwater Facility when they arrived for work.

87.     Plaintiffs Lopez and Lopez Ramirez talked to members of a night shift spraying crew about how long they were spraying chemicals in the greenhouse. They were told spraying would last all night until approximately 5:00am.

88.     Plaintiffs Lopez and Lopez Ramirez and the greenhouse workers would begin work as early as 6:00 or 6:30am, and often see the overnight spraying crew leaving when they arrived.

89.     In late 2020, Defendants directed the Phase 2 tomato plants to be torn out. The subsequent cleaning and intensive disinfecting period lasted three to four weeks.

90.     During this disinfection period, Plaintiff Lopez and other greenhouse workers were required, on a daily basis, to disinfect smaller items by hand in tubs and spray larger items with sprayers.

91.     During this period Defendants also continued widespread spraying of the greenhouse with large machine sprayers that operated on a rail system running down every row, spraying tomato troughs and equipment.

92.     Upon information and belief, Virkon S was administered during this period along with Sodium Hypochlorite 12.5%, and Virocid, which are also EPA registered pesticides

93.     Upon information and belief, all three disinfectants were machine sprayed throughout the greenhouse during this period, and Virkon S and Sodium Hypochlorite 12.5% were also administered by hand by Plaintiffs and the greenhouse workers.

94.     Sodium hypochlorite 12.5% is highly concentrated chlorine bleach and is an EPA registered pesticide.

95.     The SDS for sodium hypochlorite 12.5% warns that it can cause severe skin burns, serious and irreversible eye damages, and respiratory irritation. Immediate medical attention is required for respiratory irritation, dizziness, nausea, or unconsciousness occurs. It requires adequate ventilation is to keep airborne concentrations below exposure guidelines or otherwise use of an approved respirator.

96.     The pesticide label for Sodium Hypochlorite 12.5% recommends that treated areas be vacated at least 2 hours before entry.

97.     Virocid is a concentrated disinfectant based on quaternary ammonium and is an EPA registered pesticide.

98.     Virocid's label requires wearing protective eyewear, protective clothing, rubber gloves and the wearing of ing a particulate filtering respirator in order not to breathe the spray mist.

99.     Virocid's SDS further directs it should only be used with proper ventilation to minimize dust or vapor concentrations and that an appropriate respirator should be used if airborne particles are generated.

100.    Virocid's SDS warns it can cause "severe burns and eye damage," "allergic skin reaction," "allergy or asthma symptoms or breathing difficulties if inhaled."

<u>Defendants' Pesticide Violations of MIOSHA and the WPS</u>

101.    During the applicable periods, Defendants did not comply with MIOSHA's general duty clause, Mich. Comp. Laws § 408.1011, the WPS 40 C.F.R. Part 170.

102.    When Defendants began directing greenhouse workers to spray Virkon S, Defendants did not provide any training on how to handle it safely and failed to tell them about the possible effects of exposure or what to do with soiled clothes.

103.    Greenhouse workers spraying Virkon S were not provided any additional PPE beyond the latex gloves and surgical or cloths masks they already had for handling the plants, and COVID-19, respectively. Greenhouse workers working in close proximity to the spraying were likewise also not given any additional PPE.

104.    One day in late 2020, Plaintiff Reyes Saucedo was told by her managers Jessica and Maria to remove the label from Virkon S and replace it with a different product because food safety inspectors were coming and they did not want them to see the Virkon label.

105.    When Defendants directed Plaintiffs Lopez and Lopez Ramirez and the greenhouse workers to disinfect tools, trays and gloves in tubs of bleach, they were forced to reach into the bleach up to their elbows, wearing only latex gloves covering their hands.

106.    During the 2020-2021 disinfection of Phase 2, machine spraying was conducted on a near daily basis, during both night and day shifts for multiple weeks. Spraying during the night shift would begin in the evening and continue until around 5am the following day. During day shifts, machine spraying would take place in the greenhouse while greenhouse workers were also present.

107.    During this period Plaintiffs Lopez, Lopez Ramirez and greenhouse workers were routinely required to begin their shift as early as 6:00 or 6:30 am and would smell the strong bleach or other chemical odors as soon as they arrived.

108.    Defendants did not provide adequate ventilation, opening only a limited number of windows and doors.

109.    Upon information and belief Defendants did not conduct any air monitoring after spraying Virkon S, sodium hypochlorite 12.5%, or Virocid to determine if airborne concentrations were below exposure guidelines

110.    Defendants did not provide Plaintiffs Lopez, Lopez Ramirez or the greenhouse workers with appropriate PPE.  For the majority of the disinfection period, Plaintiffs Lopez, Lopez Ramirez and the greenhouse workers were only provided with basic latex gloves and surgical masks. Some workers received safety glasses.

111.    It was not until the last few days of the disinfection process that workers handling disinfectants were provided with full elbow-length gloves, goggles and full face respirators, and clothing coveralls.

112.    Defendants did not provide any safety training to Plaintiffs Lopez, Lopez Ramirez or the other greenhouse workers on the handling of disinfectants when cleaning tools and equipment.

113.    Defendants did not provide written or oral information to Plaintiffs Lopez, Lopez Ramirez or the other greenhouse workers regarding what disinfectants they were using nor what was being sprayed by the machine sprayers.

114.    Plaintiff Lopez looked for labels on the large containers of disinfectant the greenhouse workers used to fill smaller sprayers, but he did not see names on some of the containers.

<u>Exposure to Disinfectant Pesticides Caused Serious Medical Issues</u>

115.    When Plaintiff Reyes Saucedo prepared the Virkon S barrels as a sanitation worker she experienced nosebleeds, burning eyes, and skin irritation. She complained to managers Sulema and Jessica but her concerns were dismissed.

116.    Plaintiff Reyes Saucedo observed other greenhouse workers experience nose bleeds, and skin issues in reaction to exposure to Virkon S. One worker complained to Sulema about severe rashes all over her hands and arms, saying she needed medical treatment but Sulema said she couldn't help her.

117.    When greenhouse workers were unable to work because of adverse reactions to the disinfectants they were told to take a break. If they were then not able to continue working they were sent home without pay.

118.    Throughout the Phase 2 disinfection, Plaintiffs Lopez, Lopez Ramirez and the other greenhouse workers also frequently experienced nose bleeds, red, burning and watering eyes, headaches, feeling faint or fainting, and skin reactions including itching, burning, blisters and rashes.

119.    During the disinfection period, Plaintiffs Lopez frequently saw piles of bloody tissue paper in the bathrooms the workers used.

120.    Plaintiff Lopez Ramirez complained to one of the managers, Sulema, about feeling sick because of the disinfectants, as he was experiencing headaches, burning eyes, nose and throat, nose bleeds, nausea and dizziness. She told him to go home without pay and come back the next day.

121.    Defendants did not offer Plaintiff Lopez Ramirez medical treatment or transportation to access medical treatment.

122.     Plaintiff Lopez began experiencing daily nose bleeds during the Phase 2 disinfection period. When he complained one day to his supervisor Miriam about a nosebleed, she told him to take a break, but said that if his nose bleed didn't stop he would be sent home and not paid. He was not offered medical treatment or transportation to access medical treatment. Plaintiff Lopez waited for his nosebleed to stop and returned to work.

123.     Another day during the Phase 2 disinfection when Plaintiff Lopez got a severe headache and told a manager he knew as Sulema that he needed a more protective mask. He was again not offered medical treatment or transportation to access medical treatment.

124.     Another day Plaintiff Lopez saw a worker faint inside the greenhouse. Two supervisors sent the worker outside. The worker was later brought back in to continue working. The worker got sick the next day again and was sent home and didn't come back for 3 days.

125.     In January 2021, Plaintiff Lopez Ramirez also had bleach splash into his right eye while disconnecting a broken hose. He told his supervisor, Miriam, who sent him to wash it out, but he was not offered medical treatment or transportation to access medical treatment. His eye continued burning for weeks.

### Failure to Provide Adequate Potable Drinking Water

126.     For approximately three weeks in or around January 2021, Defendants only provided Plaintiffs Lopez and Lopez Ramirez and the greenhouse workers with one, one gallon jug of drinking water per person, per workweek.

127.     The jugs of water sat out in the warm, humid temperatures of the greenhouse, and would get hot, developing a foul odor that did not seem safe to drink after a couple of days.

128.     Plaintiffs Lopez and Lopez Ramirez and the greenhouse workers were not permitted to bring in their own water to the greenhouses.

## CLASS ACTION ALLEGATIONS

129.    Plaintiffs Lopez and Lopez Ramirez assert AWPA working arrangement claims on behalf of themselves and the Greenhouse Worker Class.

130.    Plaintiffs assert AWPA and contract claims for unpaid bonuses on behalf of themselves and the Bonus Rate Class.

131.    Plaintiffs Lopez and Lopez Ramirez assert AWPA written disclosure claims on behalf of themselves and the Written Disclosures Class.

### **Greenhouse Worker Class**

132.     Plaintiffs Lopez and Lopez Ramirez bring a class action, pursuant to Federal Rule of Civil Procedure 23, to represent a class of greenhouse workers (the "Greenhouse Worker Class") that is defined as:

> All non-H-2A migrant or seasonal workers employed in the cultivation, growing, or harvesting of produce by Defendants and/or their successors, predecessors, agents or alter egos in Defendants' Coldwater Facility, from January 1, 2020 and continuing until the final resolution of this case.

133.    Class action treatment is appropriate, as summarized in Paragraphs 134-140 below, because all of Rule 23's requirements are satisfied.

134.    The Greenhouse Worker Class is so numerous that joinder of all class members is impracticable.

135.    Plaintiffs estimate Defendant has employed 100 or more persons in the Coldwater Facility who have been subject to the Defendants' common and unlawful practices.

136.    Plaintiffs Lopez and Lopez Ramirez are class members and their claims are typical of the claims of the Greenhouse Worker Class, and they have no interests that are antagonistic to or in conflict with the interest of other class members.

137.    Plaintiffs Lopez and Lopez Ramirez will fairly and adequately represent the Greenhouse Worker Class and their interests and they have retained competent and experienced counsel who will effectively represent the class members' interests.

138.    There are questions of law and fact that are common to all class members. These include but are not limited to:

a)  what pesticides Defendants used and administered at the Coldwater Facility;

b)  when and how frequently Defendants administered pesticides in the Coldwater Facility;

c)  whether Defendants provided Plaintiffs and the Greenhouse Workers with correct and accurate information and training on the pesticides administered by Defendants;

d)  what, if any, protective equipment Defendants have provided to Plaintiffs and the Greenhouse Worker Class; and

e)  what policies Defendants executed and administered with respect to the access to and provision of potable drinking water.

139.    Common questions of law and fact predominate over questions affecting only individual class members.

140.    A class action is superior to other available methods for the fair and efficient adjudication of the Greenhouse Worker Class members' claims.

**Bonus Rate Class**

141.    Plaintiffs also bring a class action, pursuant to Federal Rule of Civil Procedure 23, to represent one class of employees who were offered a bonus piece rate (the "Bonus Rate Class") that is defined as follows:

All non-H2A migrant and seasonal workers employed in the cultivation, growing, or harvesting of produce by Defendants and/or their successors or predecessors in the Coldwater Facility during the applicable statute of limitations period and continuing until the final resolution of this case, who were offered a bonus piece rate before or during their employment.

142.    Class action treatment is appropriate, as summarized in Paragraphs 143—162 below, because all of Fed. R. Civ. P. 23's requirements are satisfied.

143.    The Bonus Rate Class is so numerous that joinder of all class members is impracticable.

144.    Plaintiffs believe Defendant has employed more than 100 workers who have been subject to the Defendant's common and unlawful practices related to the Bonus Class Members.

145.    Plaintiffs are class members, and their claims are typical of the claims of the Bonus Rate Class Members, and they have no interests that are antagonistic to or in conflict with the interest of other class members.

146.    Plaintiffs will fairly and adequately represent the Bonus Rate Class Members and their interests, and they have retained competent and experienced counsel who will effectively represent the class members' interests.

147.    Questions of law and fact exist which are common to all class members. These include but are not limited to:

   a)  what bonus rate Defendants promised to Plaintiffs and the Bonus Rate Class Members;

   b)  what production standard Defendants required Plaintiffs and the Bonus Class Rate Members to meet in order to earn a bonus;

   c)  if and when Defendants changed the terms of the Bonus Rate agreement; and

d)  if and how Defendants manipulated the total account of produce picked or other piece work completed by the Bonus Rate Class Members to avoid paying Plaintiffs and the Bonus Rate Class Members the bonus rate.

148.    Common questions of law and fact predominate over questions affecting only individual class members.

149.    A class action is superior to other available methods for the fair and efficient adjudication of the Bonus Rate Class Members' claims.

150.    Prior to the beginning of Plaintiffs Lopez and Lopez Ramirez and the Bonus Rate Class Members' start of employment, Defendants, through their farm labor contractors promised to them and the Bonus Rate class members that they could earn bonuses.

151.    When Plaintiffs Lopez and Lopez Ramirez and the Bonus Rate Class Members started at the Coldwater Facility, they were promised a piece rate bonus for surpassing production standards.

152.    Plaintiffs were never provided information in writing regarding their bonus piece rate.

153.    Plaintiffs' paystubs sometimes included a piece rate line item and a total amount paid for piece rate work but did not specify the piece rate unit of measurement, nor the pay per unit.

154.    The total piece rate amount paid divided by the piece rate amount listed does not yield a consistent rate from one paystub to another.

155.    In 2020, Defendants began making significant changes to the bonus structure.

156.    Under the new bonus structure, Defendants urged Plaintiffs to work faster under the promise of earning bonuses but earned no bonuses or significantly lower bonuses no matter how fast they worked.

157.    Under the new bonus structure, the production standards were raised repeatedly.

158.    Under the new bonus rate system, Defendants failed to keep and maintain accurate records of the amount of produce picked by Plaintiffs and each Bonus Rate Class Member.

159.    Plaintiffs and the Bonus Rate Class Members were not provided with new or additional consideration in exchange for Defendants' alteration of the bonus policy.

160.    When Plaintiff Lopez requested receipts for the amount of produce he picked, Defendants refused.

161.    When Plaintiff Lopez asked the Human Resources manager Raquel for a copy of the bonus policy in writing in approximately March 2021, she told him they didn't have one.

162.    At all times relevant to this complaint, when Plaintiffs and the Bonus Rate Class Members have exceeded production standards, Defendants have frequently refused to pay or have underpaid Plaintiffs and the Bonus Rate Class members promised bonuses.

### Written Disclosure Class

163.    Plaintiffs Lopez and Lopez Ramirez also bring a class action, pursuant to Federal Rule of Civil Procedure 23, to represent a class of non- H-2A migrant employees who were not provided written disclosure of the terms of their employment by Defendants (the "Written Disclosure Class") that is defined as:

> All non-H-2A migrant workers employed in cultivation, growing, or harvesting of produce by Defendants and/or their successors, predecessors, alter egos or agents, in the Coldwater Facility during the time beginning three years prior to the filing of this complaint through the present and

continuing until the final resolution of this case, who were not or have not been provided with written disclosures of the terms of their employment at the time of recruitment by Defendants as required by the AWPA.

164.    Class action treatment is appropriate, as summarized in Paragraphs 165-173 below, because all of Rule 23's requirements are satisfied.

165.    The Written Disclosure Class is so numerous that joinder of all class members is impracticable.

166.    Plaintiffs believe Defendants have employed more than 100 workers who have been subject to the Defendant's common and unlawful practices related to the Written Disclosure Class members.

167.    Plaintiffs Lopez and Lopez Ramirez are class members and their claims are typical of the claims of the Written Disclosure Class Members, and they have no interests that are antagonistic to or in conflict with the interest of other class members.

168.    Plaintiffs Lopez and Lopez Ramirez will fairly and adequately represent the Written Disclosure Class Members and their interests, and they have retained competent and experienced counsel who will effectively represent the class members' interests.

169.    Questions of law and fact are common to all class members, which include but are not limited to:

    a)  whether Defendants provided Plaintiffs Lopez and Lopez Ramirez and the Written Disclosure Class Members with disclosures in writing;

    b)  when, if at all, did Defendants provide Plaintiffs Lopez and Lopez Ramirez and the Written Disclosure Class Members with written disclosures; and

    c)  what terms and conditions of employment did the written disclosures, if provided by Defendants, include.

170.     Common questions of law and fact predominate over questions affecting only individual class members.

171.     A class action is superior to other available methods for the fair and efficient adjudication of the Written Disclosure Class Members' claims

172.     At all times material to this Complaint, Defendants have not provided written disclosures to Plaintiffs Lopez and Lopez Ramirez and the Written Disclosure Class Members, either on by their own action or by delegating the responsibility to a farm labor contractor or another agent, prior to their arrival to the Coldwater Facility or their commencement of work for Defendants.

173.     As a result of Defendants' failure to provide the required disclosures, Plaintiffs Lopez and Lopez Ramirez and the Written Disclosure Class Members were deprived of knowledge concerning their rights under their employment contract.

### PLAINTIFF REYES SAUCEDO'S OVERTIME ALLEGATIONS

174.     Plaintiff Reyes Saucedo worked as a sanitation worker for Defendants between approximately August 16, 2020 to approximately December 3, 2020.

175.     At all times during her employment with Defendants as a sanitation worker, Plaintiff Reyes Saucedo performed non-agricultural work which included cleaning, tables, floors, doors and other surfaces of the offices, bathrooms, and dining areas multiple times a day.

176.     In addition, as a sanitation worker, Defendants required Plaintiff Reyes Saucedo to clean and sanitize the migrant housing barracks for COVID-19, around 2-3 times a week and before new tenants would occupy the barracks.

177.    Plaintiff Reyes Saucedo used general household cleaning chemicals for cleaning the offices, bathrooms and dining areas and migrant housing, rather than the chemicals regulated as pesticides used to disinfect in the greenhouse.

178.    At all times during her employment as a sanitation worker for Defendants, Defendants employed between four to eight sanitation workers and over 200 greenhouse workers at the Coldwater Facility.

179.    At all times during her employment for Defendants as a sanitation worker, Plaintiff Reyes Saucedo did not generate any revenue for Defendants as part of her work as a sanitation worker.

180.    At all times of her employment as a sanitation worker for Defendants, Plaintiff Reyes Saucedo did not perform any primary agricultural work for Defendants, such as cultivating or harvesting crops grown in the greenhouse facilities.

181.    As a sanitation worker for Defendants, Plaintiff Reyes Saucedo frequently worked between 40 to 60 hours a week.

182.    At all times during Plaintiff Reyes Saucedo's employment for Defendants as a sanitation worker, Defendants paid Plaintiff Reyes Saucedo for her sanitation work an hourly rate of $14.50 per hour, regardless of how many hours she worked in a work week.

## CAUSES OF ACTION

### COUNT I
**Violations of the AWPA Working Arrangement Requirement**
*On behalf of Plaintiffs Lopez and Lopez Ramirez and the Greenhouse Worker Class*

183.    Plaintiffs, individually and on behalf of the Members of the Greenhouse Worker Class, reallege and incorporate the allegations set forth above as if fully set forth herein.

184.    Under the AWPA, no agricultural employer "shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association" with any migrant or seasonal agricultural worker. 29 U.S.C. § 1822(c); 29 U.S.C. § 1832(c)

185.    The AWPA creates a private right of action for any person aggrieved by a violation. *Id.* § 1854(a).

186.    The working arrangement between Plaintiffs and similarly situated persons and Defendants implied that the Defendants would follow federal and state health and safety labor protection standards.

<u>Violations of the WPS</u>

187.    The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), administered by the Environmental Protection Agency ("EPA"), governs the use of pesticides in the United States. 7 U.S.C. §§ 136-136y.

188.    Under the FIFRA, the EPA created protections for agricultural workers through pesticide-specific restrictions and label requirements, called the Worker Protection Standards ("WPS"). 40 C.F.R. Part 170.

189.    Defendants constitute "agricultural employer[s]" within the meaning of the WPS. 40 C.F.R. §§ § 170.3; 170.305.

190.    The Greenhouse Worker Class Members' "working arrangement" incorporates the WPS.

191.    Under the WPS, the agricultural employer must assure that every "worker" who is "performing activities relating to the production of agricultural plants on an agricultural establishment," receives required protections. 40 C.F.R. §§ 170.7(a); 170.305; 170.309(b).

192.    Plaintiffs Lopez and Lopez Ramirez and the Greenhouse Worker Class were workers under the WPS as they engaged in hand labor on tomato, cucumber and/or strawberry plants in the Defendants' greenhouse. *See* 40 C.F.R. § 170.3.

193.    Under the WPS agricultural employers must also ensure that every "handler" which includes persons who apply pesticides, handle opened containers of pesticides, or enter a greenhouse before inhalation exposure levels or ventilation criteria are met, receives required protections.  40 C.F.R. §§ 170.3; 170.7(a); 170.305; 170.309(b).

194.    Plaintiffs Lopez and Lopez Ramirez and the Greenhouse Worker Class were also handlers under the WPS, as they were tasked with applying disinfectant pesticides to tools and equipment and were made to enter Defendants' greenhouse before inhalation exposure or ventilation criteria were met. *See* 40 C.F.R. §§ 170.3; 170.305.

195.    The WPS forbids any agricultural employer from allowing or directing any person other than an appropriately trained and equipped handler to enter or remain in areas of a greenhouse treated with pesticide before entry restrictions and/or ventilation criteria have been met. *Id.* § 170.110(c)(1); *see also id.* § 170.405(b)(1).

196.    At no time during or prior to Plaintiffs Lopez and Lopez Ramirez's and the Greenhouse Workers' employment have Defendants provided the training required to be administered to employees working in pesticide treated areas as mandated by 40 C.F.R. §§ 170.130, 170.401.

197.    At no time during or prior to Plaintiffs Lopez and Lopez Ramirez's and the Greenhouse Workers' employment, have Defendants provided Plaintiffs Lopez and Lopez Ramirez and the Greenhouse Workers with the requisite training for pesticide handlers as mandated by 40 C.F.R. §§ 170.230, 170.501.

198.    Defendants have repeatedly allowed and directed Plaintiffs Lopez and Lopez Ramirez and the Greenhouse Worker Class Members to handle pesticides to disinfect tools and equipment, to enter areas of the Coldwater Facility during the application of pesticide, and directly after they have been treated with pesticides without adequate ventilation or expiration of restricted entry intervals, in violation of the WPS entry restrictions for greenhouses and enclosed spaces. 40 C.F.R. §§ 170.110(c), 170.112, 170.405(b), 170.407 and 170.605.

199.    At various times during Plaintiffs Lopez and Lopez Ramirez's and the Greenhouse Worker Class members' employment, Defendants failed to assure that Plaintiffs Lopez and Lopez Ramirez and the Greenhouse Workers were provided correct and accurate information or had read or were aware of the pesticide administration and safety requirements found on the labels of the pesticides caused to be administered in the Coldwater Facility, as required by 40 C.F.R. § 170.112.

200.    At various times during Plaintiffs Lopez and Lopez Ramirez's and the Greenhouse Worker Class members' employment Defendants directed them to handle pesticides to disinfect tools and equipment, without adequate training, knowledge or personal protective equipment in violation of the WPS requirements for protection of pesticide handlers. 40 C.F.R. §§ 170.501, 503, 505, 507.

201.    In approximately January 2021, a liquid chemical splashed into Plaintiff Lopez Ramirez' eye, and Defendants failed to provide Plaintiff Lopez Ramirez any obtainable information on the chemical's name, registration number or active ingredients.

202.    Plaintiffs Lopez and Lopez Ramirez and the Greenhouse Worker Class Members have been aggrieved by Defendants' violations of the WPS and AWPA because they have been

exposed to dangerous pesticides and have suffered adverse health effects as a result of Defendants' actions.

203.     During Plaintiffs' and the Greenhouse Worker Class Members' employment for Defendants, Defendants used and administered pesticides in containers which either did not have any label identifying the chemical that was contained therein or mislabeled and incorrectly identified the pesticide contained therein.

204.     Upon information and belief, Defendants failed to display information about any pesticide that has been applied within the last 30 days, including the product name, active ingredient, time and date of application, and how long entry is restricted in violation of 40 C.F.R. § 170.122.

205.     Defendants violated the terms of these working arrangements without justification.

206.     Defendants thereby violated the AWPA with respect to each of the Greenhouse Worker class members. 29 U.S.C. § 1802(2).

207.     Plaintiffs have attempted to resolve these matters with Defendants but have been unsuccessful to date.

<u>Violations of the MIOSHA</u>

208.     Under the Michigan Occupational Safety and Health Act ("MIOSHA"), the U.S. Department of Labor field sanitation standards ("FSS") are incorporated into Michigan state law by reference. *See* 29 C.F.R. § 1928.110(a); Mich. Comp. Laws § 408.1014n. The FSS are applicable to any agricultural establishment where 11 or more employees work in hand-labor field operations. *Id.*

209.    Defendants constitute "agricultural establishment[s]" within the meaning of the FSS.

210.    Plaintiffs' and the Greenhouse Worker class members' working arrangement incorporates the FSS.

211.    *Inter alia* the FSS requires that an agricultural employer provide cool, potable drinking water, dispensed in single use drinking cups or fountains, in sufficient amounts for all employees, taking into account the air temperature, humidity and nature of work being performed.  *See* Mich. Comp. Laws § 408.1014n

212.    Defendants repeatedly violated the FSS by limiting Plaintiffs and the Greenhouse Worker Class to only a one-gallon jug of water per workweek that sat out in the warm, humid temperatures of the greenhouse all week.

213.    Defendant therefore violated the working arrangement, and therefore violated the AWPA, with respect to each of the Workers. 29 U.S.C. § 1802(2).

214.    MIOSHA also includes a general duty clause requiring employers to "[f]urnish to each employee, employment and a place of employment that is free from recognized hazards that are causing, or are likely to cause, death or serious physical harm to the employee." Mich. Comp. Laws § 408.1011.

215.    Defendants failed to furnish Plaintiffs Lopez and Lopez Ramirez and the Greenhouse Worker Class a place of employment free from the recognized hazards of repeated and exposure to harmful chemicals, despite it causing them serious physical harm.

216.    Plaintiffs have attempted to resolve these matters with Defendants but have been unsuccessful to date.

## COUNT II
### Violations of the AWPA Written Disclosures Requirement

*On behalf of Plaintiffs Lopez and Lopez Ramirez and the Written Disclosure Class*

217.    Plaintiffs and the Written Disclosure Class reallege the above paragraphs as though set forth fully herein.

218.    At all times relevant to this Complaint, Defendants Maroa Farms and Mastronardi Produce-USA have constituted "agricultural employers" within the meaning of the AWPA. See 29 U.S.C. § 1802(2).

219.    At all times relevant to this Complaint, Plaintiffs Lopez and Lopez Ramirez and the Written Disclosure Class Members have been "migrant agricultural worker[s]" within the meaning of 29 U.S.C. § 1802(8) and employed by Defendants.

220.    Defendants recruited Plaintiffs Lopez and Lopez Ramirez and the Written Disclosure Class Members through their agent farm labor contractors prior to each Plaintiff and/or Class Member's commencement of work for Defendants.

221.    Pursuant to 29 U.S.C. § 1821 Defendants were required to provide written disclosures to Plaintiffs Lopez and Lopez Ramirez and the Written Disclosure Class Members at the time of their recruitment, containing certain information about the conditions of their employment, including but not limited to; the place of employment, the crops and types of activities that the worker will be employed on; the wage rate to be paid; the period of employment and the entity to be informed if the worker suffers an on-the-job injury.

222.    At all times relevant to this Complaint, Defendants have failed to provide Plaintiffs and the Written Disclosure Class Members with the disclosures required by Section 1821 of the AWPA, either independently by themselves or through their agent farm labor contractors.

223.     Plaintiffs and the Written Disclosure Class members have been harmed by

Defendants' failure to act in this respect, as they have not been provided with the appropriate

information necessary to ascertain whether they have been paid all the wages they have earned or

to redress their underpayment of wages.

224.     Plaintiffs have attempted to resolve this issue with Defendants but have been

unsuccessful to date.

<u>**COUNT III**</u>
**Violations of the AWPA with Regard to Bonus Pay**
*On Behalf of Named Plaintiffs and Bonus Rate Class Members*

225.     Plaintiffs and the Bonus Rate Class Members, who were or are migrant and

seasonal workers under the AWPA, reallege the above paragraphs as though set forth fully

herein.

226.     Defendants directly, or through their farm labor contractor agents, promised

Plaintiffs Lopez, Lopez Ramirez and Reyes Saucedo and the AWPA Bonus Rate Class Members

that they would be paid a piece rate bonus for surpassing production standards prior to the

commencement of their employment.

227.     Defendants violated the following provisions of the AWPA with respect to their

promises of bonuses:

a)  29 U.S.C. § 1822(c) and 29 U.S.C. § 1832(c): violating the working arrangement

    by unilaterally changing the bonus policies after the commencement of

    employment and not providing the promised bonuses to the AWPA Bonus Rate

    Class Members;

b)  29 U.S.C. § 1822(a) and 29 U.S.C. § 1832(a): failing to pay wages when due,

    specifically the promised bonuses for the AWPA Bonus Rate Class Members;

c)  29 U.S.C. § 1821(f) and 29 U.S.C. § 1831(e): provide false or misleading
information regarding the bonus pay to the AWPA Bonus Rate Class Members by
promising bonuses could be earned if Class Members worked faster but
continually raising production standards and miscounting work in order to
underpay or avoid paying bonuses; and

d)  29 U.S.C. § 1821(d) and 29 U.S.C. § 1831(c): failing to provide information and
records related to their piece-rate wages and bonus pay to the AWPA Bonus Rate
Class Members.

228.   Plaintiffs and the AWPA Bonus Rate Class Members suffered actual damages as
a result of Defendants' violations of the AWPA.

229.   Plaintiffs and the Bonus Rate Class Members are entitled to statutory or actual
damages, whichever is greater, for each violation of the AWPA.

230.   Plaintiffs have attempted to resolve this issue with Defendants but have been
unsuccessful to date.

## COUNT IV
### Breach of Contract with Respect to Bonus Pay Guarantees
*On Behalf of Named Plaintiffs and the Bonus Rate Class Members*

231.   Plaintiffs and the Bonus Rate Class Members, reallege the above paragraphs as
though set forth fully herein.

232.   Prior to the beginning of Plaintiffs' and the Bonus Rate Class Members'
employment, Defendants offered Plaintiffs and the Bonus Rate Class members the opportunity to
earn and receive compensation as a piece rate bonus for surpassing production standards.

233.    Plaintiffs and the Bonus Rate Class Members accepted Defendants' offer by traveling to Coldwater, Michigan to begin work for Defendants and/or by beginning work for Defendants.

234.    Plaintiffs and the Bonus Rate class members relied on Defendants' offer, by traveling to Coldwater, Michigan and/or by beginning work for Defendants.

235.    Pursuant to the Implied Covenant of Good Fath and Fair Dealing, every contract implies on each party to the contract a duty of good faith of fair dealing in its performance and enforcement. Rest. (2d) Contracts § 205.

236.    Defendants breached their contracts with Plaintiffs and the Bonus Rate Class members by changing the production standard that Plaintiffs and the Bonus Rate Class members were required to meet to earn the premium piece rate.

237.    Defendants breached their contracts with Plaintiffs and the Bonus Rate Class members by falsely manipulating the recorded production levels for each of the Plaintiffs and Bonus Rate Class members, so as to prevent them from reaching the daily threshold and earning the premium piece rate.

238.    By unilaterally changing the terms and conditions for changing the conditions for achieving the bonus rate and by falsely manipulating the amount of produce that Plaintiffs and the Bonus Rate Class Members picked, Defendants violated the Implied Covenant of Good Faith and Fair Dealing of their contracts Plaintiffs and the Bonus Rate Class Members.

239.    Plaintiffs and the Bonus Rate class members have been aggrieved by Defendants' breach of the contracts, because they have been denied the pay they were entitled to receive under their contracts.

**COUNT V**
**Unjust Enrichment/Quantum Meruit**

*On Behalf of Named Plaintiffs and the Bonus Rate Class Members*

240.    Plaintiffs and the Bonus Rate Class Members reallege the above paragraphs as though set forth fully herein.

241.    Defendants induced Plaintiffs and the Bonus Rate Class Members to travel to and/or to begin work for them at the Coldwater Facility by offering them a premium piece rate for surpassing production standards.

242.    Plaintiffs and the Bonus Rate Class members reasonably relied on Defendants' promise to pay the premium piece rate if they picked more than the production standard, in deciding to travel to Coldwater and/or by beginning to work and continuing to work for Defendants at the Coldwater Facility.

243.    Defendants failed to fulfill their promise to pay Plaintiffs and the Bonus Rate class members for the additional work completed above the production standard.

244.    Defendants have been unjustly enriched by receiving extra work from Plaintiffs and the Bonus Rate class members and increased productivity from them, while avoiding an obligation to pay a premium wage in exchange.

245.    As a consequence to Defendants' unjust enrichment, Plaintiffs are entitled to receive the value of the extra work conferred upon Defendants.

### COUNT VI
**Violation of the Fair Labor Standards Act (FLSA) Overtime Provisions**
*On Behalf of Plaintiff Reyes Saucedo*

246.    Plaintiffs reallege the above paragraphs as though set forth fully herein.

247.    At all times relevant to this Complaint, Defendants Maroa Farms and Mastronardi Produce-USA have been "employer[s]" covered by the overtime wage requirements set forth in the FLSA. 29 U.S.C. § 203(d).

248.    At all times material to this Complaint, Plaintiff Reyes Saucedo was an employee of Defendants within the meaning of 29 U.S.C. § 203(e).

249.    At all times relevant to this complaint, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, 29 U.S.C. § 203(s).

250.    Defendants employed Plaintiff Reyes Saucedo as a sanitation worker from approximately August 16, 2020 to approximately December 3, 2020.

251.    During the time Defendants employed Plaintiff Reyes Saucedo to work as a sanitation worker, they frequently required her to work 40-60 hours a week.

252.    As a sanitation worker, Defendants required Plaintiff Reyes Saucedo to clean the offices, dining areas and bathrooms at the Coldwater Facility multiple times a day, every week.

253.    In addition, as a sanitation worker, Defendants required Plaintiff Reyes Saucedo to clean and sanitize Maroa Farms' migrant housing barracks 2-3 times a week and before new tenants arrived to the barracks style residences in order to clean for COVID-19.

254.    The cleaning of the migrant housing barracks and the offices, dining areas and bathrooms of the Coldwater Facility was not related to the agricultural operation or production of Defendants.

255.    In each and every week that Defendants employed Plaintiff Reyes Saucedo as a sanitation worker, they required Plaintiff Reyes Saucedo to perform non-agricultural work.

256.    Because Defendants required Plaintiff Reyes Saucedo to perform non-agricultural work during each of the weeks she was employed as a sanitation worker, Defendants were legally obligated to compensate Plaintiff Reyes Saucedo at the overtime rate of one and one-half times her regular rate for all hours that she worked in excess of 40 in a given work week.

257.    During the time that Defendants employed Plaintiff Reyes Saucedo to work as a sanitation worker, Defendants did not and refused to pay Plaintiff Reyes Saucedo the overtime rate for all hours she worked in excess of 40 hours in a given work week.

258.    Defendants' failure to pay Plaintiff Reyes Saucedo the overtime rate for all hours she worked in excess of 40 in a given workweek was willful.

259.    Pursuant to 29 U.S.C. § 216(b), Plaintiff Reyes Saucedo is entitled to recover her unpaid overtime wages, plus an equal sum in liquidated damages, plus reasonable attorney fees and costs of this litigation.

## COUNT VII
### Violation of the Improved Workforce Opportunity Wage Act (IWOWA) Overtime Provisions
*On Behalf of Plaintiff Reyes Saucedo*

260.    Plaintiffs fully incorporate and reallege the previous paragraphs as though fully set forth herein.

261.    At all times material to this Complaint, Defendants have been "employer[s]" within the meaning of MCL 408.932(d) and have been covered by the overtime wage requirements set forth in the Improved Workforce Opportunity Wage Act (IWOWA).

262.    At all times material to this Complaint, Plaintiff Reyes Saucedo has been an employee within the meaning of MCL 408.932(c).

263.    Defendants employed Plaintiff Reyes Saucedo as a sanitation worker from approximately August 16, 2020 to approximately December 3, 2020.

264.    During the time Defendants employed Plaintiff Reyes Saucedo to work as a sanitation worker, they frequently required her to work for 40-60 hours in each work week that she worked.

265.    As a sanitation worker, Defendants required Plaintiff Reyes Saucedo to clean the offices, dining areas and bathrooms at the Coldwater Facility multiple times a day, every week.

266.    In addition, as a sanitation worker, Defendants required Plaintiff Reyes Saucedo to clean and sanitize Maroa Farms' migrant housing barracks 2-3 times a week and before new tenants arrived to the barracks residences, in order to clean for COVID-19.

267.    The cleaning of the migrant housing barracks and the offices, dining areas and bathrooms of the Coldwater Facility, was not related to the agricultural operation or production of Defendants.

268.    In each and every week that Defendants employed Plaintiff Reyes Saucedo as a sanitation worker, they required Plaintiff Reyes Saucedo to perform non-agricultural work.

269.    Because Defendants required Plaintiff Reyes Saucedo to perform non-agricultural work during each of the weeks she was employed as a sanitation worker, Defendants were legally obligated to compensate Plaintiff Reyes Saucedo at the overtime rate of one and one-half times her regular rate for all hours that she worked in excess of 40 in a given work week.

270.    During the time that employed Plaintiff Reyes Saucedo to work as a sanitation worker, Defendants did not and refused to pay Plaintiff Reyes Saucedo the overtime rate for all hours she worked in excess of 40 hours in a given work week.

271.    Pursuant to MCL 408.939(1)(a), Plaintiff Reyes Saucedo is entitled to recover her unpaid overtime wages, plus an equal sum in liquidated damages, plus reasonable attorney fees and costs of this litigation.

...

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs on behalf of themselves and the various Class Members respectfully demand a jury trial and pray that this Honorable Court:

(a)  Pursuant to Rule 23, certify the Named Plaintiffs as representatives of a class of similarly situated persons on Counts I-Vof this Complaint;

(b)  Grant declaratory relief that Defendants have violated the rights of named Plaintiffs and similarly situated persons;

(c)  Award Plaintiffs Lopez and Lopez Ramirez and The Greenhouse Worker Class Members all damages available under the AWPA in an amount that is fair, just and reasonable, including but not limited to statutory damages and actual damages for past, present and future medical expenses, wage loss, physical and emotional distress, mental anguish, humiliation and embarrassment, together with other actual damages and punitive damages for Defendants' violation of the working arrangement with respect to the WPS and FSS;

(d)  Award Plaintiffs Lopez and Lopez Ramirez and the Written Disclosure Class Members all damages available under the AWPA in an amount that is fair, just and reasonable, including but not limited to statutory damages and actual damages for Defendants' violations of the written disclosure requirements of the AWPA;

(e)  Award Plaintiffs and The Bonus Rate Class Members all damages available under the AWPA in an amount that is fair, just and reasonable, including but not limited to statutory damages and actual damages for Defendants' violations of the working arrangement with respect to their non-payment of the promised piece rate bonus;

(f)  Award Plaintiffs and the Bonus Rate Class Members expectation damages for Defendants' breach of contract with respect to their obligation to pay the bonus piece rate;

(g) Award Plaintiff Reyes Saucedo damages in the amount to her unpaid overtime wages and

an equal sum in liquidated damages, plus court costs and reasonable attorneys' fees

related to this litigation;

(h) Grant such other relief as this Court deems equitable just and proper.


Dated: June 1, 2022                                    Respectfully Submitted,


**MICHIGAN IMMIGRANT RIGHTS CENTER**
*/s/* Anna Hill Galendez
Anna Hill Galendez (P78632)
ahill@michiganimmigrant.org
Diana E. Marin (P81514)
dmarin@michiganimmigrant.org
15 S Washington Street, Suite 201
Ypsilanti, MI 48197
Telephone: (734) 239-6863
Facsimile: (734) 998-9125


**FARMWORKER JUSTICE**
*/s/* Trent R. Taylor
Trent R. Taylor (OR Bar No. 196045)
ttaylor@farmworkerjustice.org
Teresa C. Pulaski (D.C. Bar No. 1780810) *admission pending*
tpulaski@farmworkerjustice.org
1126 16th Street NW, Suite LL101
Washington, DC 20006
Telephone: (202) 293-5420
Facsimile: (202) 293-5427


***Plaintiffs' Counsel***