UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN LOPEZ, OSCAR CARLOS
LOPEZ RAMIREZ and RAMONA REYES
SAUCEDO,

        Plaintiffs,

v.

MASTRONARDI PRODUCE-USA, INC.
and MAROA FARMS, INC.,

        Defendants.

Case No. 1:22-cv-00484
Hon. Robert J. Jonker
Mag. Judge Phillip J. Green

---

**JOINT MOTION FOR CLASS CERTIFICATION AND
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Benjamin Lopez, Oscar Carlos Lopez Ramirez, and Ramona Reyes

Saucedo (collectively "Named Plaintiffs" or "Plaintiffs"), by and through their

counsel of record Michigan Immigrant Rights Center and Farmworker Justice, and

defendants Mastronardi Produce-USA, Inc. and Maroa Farms, Inc. (collectively

"Defendants"), by and through their counsel Clark Hill PLC, hereby move this Court

for an order certifying the Class (as defined in the Brief in Support of this Motion)

for the defined class members ("Class Members"); granting preliminary approval of

the proposed settlement memorialized in the Brief in Support of this Motion,

including the proposed drafts of the "Class Notice," "Class Exclusion Form," and

"Claim Submission Form,"; authorizing the proposed notice schedule and mechanism; preliminarily approving the Named Plaintiffs' attorneys as class counsel; and setting a hearing date on final approval of the Settlement.

The parties have reached an arm's length negotiated settlement and this settlement will not only address the asserted rights of the Plaintiffs and Class Members but will also bring an end to the litigation for the Defendants.  Thus, the proposed settlement will benefit all parties.

This Joint Motion is made and based upon terms placed on the Court record during a mediation with this Court, authorities set forth herein, any affidavits attached hereto, the papers and pleadings on file, and such oral argument as the Court may entertain at the hearing of this matter.

/s/*Anna Hill Galendez*
MICHIGAN IMMIGRANT RIGHTS CENTER
Anna Hill Galendez (P78632)
Adam Jeffries (P69432)
350 E. Michigan Ave, Suite 315
Kalamazoo, Michigan 49007
ahill@michiganimmigrant.org
ajeffries@michiganimmigrant.org
(616) 600-9433

/s/ *Trent R. Taylor*
FARMWORKER JUSTICE
Trent R. Taylor (OR Bar No. 196045)
1126 16th Street NW, Suite LL101
Washington, D.C. 20006
ttaylor@farmworkerjustice.org
(202) 293-5420
*Attorneys for Plaintiffs*

/s/ *Maria Fracassa Dwyer*
CLARK HILL PLC
Maria Fracassa Dwyer (P60946)
Hannah K. Reisdorff (P80101)
500 Woodward Avenue - Suite 3500
Detroit, Michigan 48226
mdwyer@clarkhill.com
hreisdorff@clarkhill.com
(313) 965-8300
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN LOPEZ, OSCAR CARLOS          Case No. 1:22-cv-00484
LOPEZ RAMIREZ and RAMONA REYES        Hon. Robert J. Jonker
SAUCEDO,                              Mag. Judge Phillip J. Green

       Plaintiffs,

v.

MASTRONARDI PRODUCE-USA, INC.
and MAROA FARMS, INC.,

       Defendants.

---

## BRIEF IN SUPPORT OF JOINT MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

### INTRODUCTION

This Joint Motion seeks approval of class certification and for approval of the Proposed Class Action Settlement Agreement of the parties, which includes resolution of the Named Plaintiffs' allegations compromising Counts I-III of Plaintiffs' Amended Complaint. Ex. 1.

After approximately one year of litigation, voluminous paper discovery and preliminary motion practice, and a full-day settlement conference with Magistrate Judge Phillip Green serving as facilitator and attended by counsel and their respective client representatives, the parties have reached an agreement to settle their dispute which they now present for preliminary approval. In particular, the parties have resolved the pending claims concerning allegations that Defendants violated

the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") by not: paying wages and bonuses when due, complying with working arrangements, providing required information on check stubs, complying with pesticide use regulations, and making required written disclosures about the terms and conditions of employment, as well as by providing false and misleading information. (*See* 29 U.S.C. §§ 1821, 1822, 1831, 1832 and Amended Complaint, paragraphs 217, 225, 234, 239 (a)-(d)). The settlement negotiated by the parties, with the assistance of Judge Green, was also placed on the record and represents a full and final result for the settlement class.

The parties have agreed that the remaining claims and Defendant Mastronardi Produce-USA, Inc. should be dismissed pursuant to their settlement agreement following final class certification.

## SUMMARY OF PLAINTIFFS' CLAIMS AND PROCEDURAL HISTORY

Named Plaintiffs filed their original Complaint in this Court on June 1, 2022. In this Complaint, Plaintiffs brought class action claims alleging violations of the AWPA[1], Michigan Occupational Safety and Health Administration standards, breach of contract, violation of the Fair Labor Standards Act ("FLSA"), and violation of the Improved Workforce Opportunity Wage Act ("WOWA"). (ECF 1). Defendants timely responded to the original Complaint. On August 17, 2022, Plaintiffs filed an Amended Complaint, adding claims of assault and battery. (ECF 9). Defendants timely responded to Plaintiffs' Amended Complaint.

Following the Scheduling Conference held on September 12, 2022, the Court issued the Scheduling Order and dismissed Plaintiffs' state law claims in their Amended Complaint, thereby declining to exercise supplemental jurisdiction. (ECF

---

[1] The provisions of the AWPA do not cover H2A workers. 29 U.S.C. § 1802 (8)(B) and 10(B).

13). This left Counts I-III of Plaintiffs' Complaint alleging violations of the AWPA, including: alleged violation of certain working arrangement requirements including under the Michigan Occupational Safety and Health Act (MIOSHA) and the Occupational Safety Health Act (OSHA) and Worker Protection Standards, 29 U.S.C. § 1822(c) and 29 U.S.C. § 1832(c); 40 C.F.R. §§ 170.7 et. seq; 29 C.F.R. § 1928.110(a); Mich. Comp. Laws § 408.1011-4n et. seq. (Count I); alleged failure to comply with written disclosure requirements *see including* 29 U.S.C. § 1821(a) (Count II); and, violations regarding promised bonuses and documentation regarding bonuses and piece rate pay, *see including* 29 U.S.C. §§ 1822(c), 1832(c), 1822(a), 1832(c), 1821(f), 1831(e), 1821(d) and 1831(d); (Count III).[2]

The parties attended a Court-Ordered Settlement Conference on May 12, 2023, held before Magistrate Judge Phillip Green. The Conference lasted from approximately 9:00 a.m. to 6:30 p.m. During the Settlement Conference, the parties agreed to the key terms of a class action settlement agreement, which were placed on the record.

## **SUMMARY OF THE SETTLEMENT**

Defendants deny all allegations of wrongdoing, fault, liability or damage contained in the Amended Complaint with respect to the Named Plaintiffs and the putative class members. The parties wish to settle the matter on the terms and conditions stated herein in order to eliminate the burden, risk and expense of protracted and costly litigation and to put the Named Plaintiffs' and the putative class members' claims to rest. For settlement purposes only, the parties agree to the following terms:

---

[2]Count VI of the Complaint related only to Plaintiff Saucedo alleging violation of the FLSA. Count VI of the Amended Complaint is not at issue as part of this class action settlement. This claim is separately being resolved.

## I.    Initial Settlement Class

The parties have agreed to the Conditional Class Certification of Counts I-III based on the following class definition:

> All non-H2A, migrant and seasonal crop care workers who worked at Maroa Farms, Inc., 270 N. Fillmore Road, Coldwater, MI at any time during the period from June 1, 2019, through the initial mailing date of the Class Action Settlement Notice.

*See* 29 USC § 1802.

## II.    Defendants will Issue Payments in Accordance with the Court Approved Notice.

As consideration for the settlement, Defendants shall place a total of $160,000 in a settlement fund ("Settlement Fund") for class member claims of a pro rata share of the Settlement Fund not to exceed $400 per class member related to the Count III alleged failure to provide information on pay statements related to piece-rate wages and bonus pay. All fees and costs and third-party class settlement administration costs shall be paid from the Settlement Fund. The remaining amount shall be divided among those class members who submit a claim form on a pro rata share up to a maximum of $400.00. Any sums remaining after payment of the costs of administering the settlement and payment of the pro rata individual settlement distributions shall revert back to the Defendants.

In addition to, and separate from the Settlement Fund, the Parties agree that Defendants shall pay $6,000.00 to each of the three named plaintiffs (totaling $18,000) as a service award, in recognition of their significant efforts to pursue these claims on behalf of the Class Members, subject to court approval.

The Parties agree that each party shall cover its own attorney fees and costs for the class claims in the lawsuit.  All payments made to Class Members and Named Plaintiffs shall be considered non-wage payments.

Rust Consulting, Inc. will serve as the third-party class settlement

6

administrator ("Settlement Administrator") and administer, among other items, the Class Notice, Exclusion Forms, and Claim Submission Forms (attached hereto as Exs. 2-4), the processing of the Class Members' claims, and the issuance of the settlement payments to the Class Members.

Named Plaintiffs' counsel, regardless of whether they are certified as class counsel, are not entitled to fees or costs as part of the Settlement or from the Settlement Fund.  Any service award to a Named Plaintiff will be subject to Court approval and will be paid separately from the Settlement Fund. The parties have agreed to pay a Named Plaintiff service award of up to $6,000.

Following the deduction of the class settlement administration costs from the Settlement Fund, the individual settlement awards approved by the Court will be distributed from the Net Settlement Fund ("NSF").

The Settlement Fund is a reversionary, total payout settlement.  In other words, any unclaimed portions of the NSF will revert to Maroa Farms, as will all uncashed settlement checks (if any) that remain uncashed one year following the effective date of the settlement agreement.

### III.   <u>Notice and Right to Opt Out.</u>

Within twenty-one (21) days of the Preliminary Approval of the Settlement, the Settlement Administrator will transmit Notice of this settlement ("Class Notice"), the Exclusion Form and the Claim Form in English, Spanish, and Haitian Creole, via first-class mail, to all Class Members whose names and addresses are known based on information provided by Defendants. Twenty-one (21) days following the Preliminary Approval of the Settlement the 90-day claim, exclusion (opt-out) and objection period will commence.

Ten (10) days after transmitting Notice of the settlement, the Exclusion Form, and the Claim Form, the Settlement Administrator shall transmit a text message

where available with access to the Notice, Exclusion Form, and Claim Form in English, Spanish, and Haitian Creole to all class members whose names and phone numbers are known based on information provided by Defendants, with the option to return the claim form or exclusion form via mail, text, email, or fax with an electronic signature.  A copy of the Notice, Claim Form, and Exclusion Form are attached as Exhibits 1-3.  Although the formatting of the Notice, Claim Form, and Exclusion Form may change, both parties must approve in writing any changes in content.

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED.

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed settlement class is appropriate for certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Federal Rule of Civil Procedure 23(a). Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 460 (2013). Because Named Plaintiffs allege the propriety of class certification under Fed. R. Civ. P. 23(b)(3), they must also demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

## A.    The Numerosity Requirement is Satisfied.

The numerosity requirement is met when joining such a large number of plaintiffs in a single suit would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). There is no fixed numerical threshold to satisfy the numerosity requirement, and a reasonable estimate of the number of putative class members is sufficient. *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 520 (E.D. Mich. 2013) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)).   In this case, the Settlement Class is estimated to be approximately 1,300 persons, making joinder impracticable and therefore satisfying the numerosity requirement.

## B.    The Commonality Requirement is Satisfied.

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The threshold for demonstrating the commonality requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013); *see also Whirlpool Litig.*, 722 F.3d at 582–83.

Here, Named Plaintiffs allege that uniform practices of Defendant(s) led to the alleged violations of the AWPA.  In particular, Plaintiffs assert that uniform practices of Defendant(s) led to: the alleged failure to provide the Class Members with required information on their written disclosures and pay stubs consistent 29 U.S.C. § 1821(d) and 29 U.S.C. § 1831(c), (Amended Complaint , paragraphs 234, 239(d)); did not pay the Class Members promised bonuses consistent with 29 U.S.C. § 1822(a) and 29 U.S.C. § 1832(a), (Amended Complaint, paragraph 239(b)); provided information regarding bonuses inconsistent with 29 U.S.C. § 1821(f) and

29 U.S.C. § 1831(e) to Class Members, (Amended Complaint, paragraph 239(c)); and violated of the terms of the working arrangements with the Class Members, 29 U.S.C. § 1822(c) and 29 U.S.C. § 1832(c), (Amended Complaint  paragraphs 217, 225, 239(a)).

More specifically, Named Plaintiffs contend that factual determinations such as what pesticides Defendants used and administered; whether Defendants provided Plaintiffs and the Greenhouse Workers with certain information and training on the pesticides administered by Defendants; and what protective equipment Defendants have provided to Plaintiffs and the Greenhouse Worker Class are common to the allegations that constitute Count I for all Class Members.

Similarly, Named Plaintiffs contend that factual determinations such as what written disclosures Defendants provided Plaintiffs Lopez and Lopez Ramirez and Written Disclosure Class Members and when those were provided are common to the allegations to that constitute Count II for all Class Members.

Named Plaintiffs also contend that factual determination such as what bonus rate Defendants promised to Plaintiffs and the Bonus Rate Class Members; what production standard Defendants required Plaintiffs and the Bonus Class Rate Members to meet in order to earn a bonus; and if and when Defendants changed the terms of the Bonus Rate agreement are common to the allegations concerning Count III for all Class Members.

Named Plaintiffs contend that determination of the truth or falsity of these contentions can be made on a class wide basis and will resolve the issues central to each class member's claims at once. Given that there are multiple questions of law and fact common to members of the class, the commonality requirement is satisfied. *See, e.g., Velazquez v. Burch Equip., L.L.C.,* No. 7:14-CV-00303-FL, 2016 WL 917320, at *3 (E.D.N.C. Mar. 8, 2016) (commonality requirement satisfied where common question of whether farmer failed to disclose, make, and preserve wage

statements under AWPA existed); *Mateo-Evangelio v. Triple J Produce, Inc.*, No. 7:14-CV-302-FL, 2016 WL 183485, at *5 (E.D.N.C. Jan. 14, 2016) (commonality requirement satisfied where plaintiffs and class members shared question of whether farmer allegedly failed to make and preserve wage statements and records which accurately disclosed and recorded the basis on which wages were to be paid and the total pay period earnings).

### C.    The Typicality Requirement is Satisfied.

Fed. R. Civ. P. 23(a)(3)'s typicality requirement demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. The interests and claims of the plaintiffs need not be identical to satisfy the typicality requirement. *Reese v. CNH America, LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005). In fact, "[t]ypicality may be *presumed* when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001) (emphasis added). Fluctuations in the underlying facts, however, do not destroy typicality. *Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009, 1016 (W.D. Mich. 1987); *Igelsias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007) (surviving typicality for all employees despite the fact that two named plaintiffs worked exclusively in one department of the farm and that workers in other departments performed different tasks on different schedules).

Named Plaintiffs' allegations are based in the same course of conduct by Defendants towards all remaining putative class members. Similarly, the theory for imposing liability on Defendants is identical across the class.  The same evidence that would be used to prove the Named Plaintiffs' claims would be the same for the

entire class.  As such, the Named Plaintiffs' claims are "typical," and class treatment is appropriate. *See Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (finding typicality met where "[t]he class representatives' claims arose from the same events, legal documents, and consequences and legal theories affecting all [class members]").

### D.    The Adequacy Requirement is Satisfied.

Named Plaintiffs must satisfy Rule 23(a)(4)'s adequacy requirement by showing that they will fairly and adequately protect the interests of the Settlement Class.  *See* Fed R. Civ. P. 23 (a)(4).  "The two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at \*19 (E.D. Mich. July 13, 2006) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)); *see Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013).  Here, Named Plaintiffs have the same interests as the remaining putative class members, as they purport to have all been affected by Defendants' alleged patterns and practices with respect to certain requirements under AWPA in the same manner.

The Named Plaintiffs have also retained qualified counsel.  Named Plaintiffs' counsel has advocated for the class throughout the litigation, and the six-figure settlement obtained for the class is evidence that they, and their counsel, have been acting to fairly and adequately represent the settlement class's interests as a whole. Named Plaintiffs' counsel have likewise investigated the class claims, reviewed and analyzed discovery, and participated in a full-day Settlement Conference with the Court. Both the Michigan Immigrant Rights Center and Farmworker Justice have bilingual staff members who can communicate with Named Plaintiffs and absent class members in Spanish.  It follows that the adequacy requirement is met, and the

Court should preliminarily approve the Named Plaintiffs' attorneys as class counsel and preliminarily appoint the Named Plaintiffs as class representatives.

**E.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).**

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: "Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3)).

> In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

*Amchem*, at 615 (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23)**Error! Bookmark not defined.**. This test has been held to be more demanding than Rules 23(a)'s simple commonality requirement. Indeed, "[T]he Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem*, 521 U.S. at 617.   Here, the individual claims are relatively small. Furthermore, the AWPA was enacted to "assure necessary protections for migrant and seasonal agricultural workers." 29 U.S.C. § 1801. It follows that the class treatment is more effective in effectuating this goal than requiring each migrant and/or seasonal agricultural worker to bring a claim independently.

### 1.    Common Questions of Law and Fact Predominate.

The predominance prong calls for class "'cohesion [such that] prosecution of the action through representatives would be quite unobjectionable[.]'" *Amchem*, 521 U.S. at 616.  Like the commonality requirement, the predominance requirement requires the existence of common questions of law and fact but imposes the more stringent requirement that common issues predominate over individual issues. *Machesney v. Lar-Bev of Howell, Inc.,* 292 F.R.D. 412, 423 (E.D. Mich. 2013).

Here, as already discussed, the Named Plaintiffs allege that Defendants engaged in a common course of conduct vis-à-vis its obligations under the AWPA with respect to the putative class members. Proof or disproof of this alleged course of conduct will lead the class to "prevail or fail in unison." *Whirlpool,* 722 F.3d at 859 (quoting *Amgen,* 133 S. Ct. at 1191). It follows that the predominance requirement is met.

### 2.    Class Treatment is Superior.

Furthermore, class resolution is "superior" in this case.  *See Amchem*, 521 U.S. at 615 ("Rule 23 (b)(3) permits certification where class suit 'may . . . be convenient and desirable.'" (internal citations omitted)).  Fed. R. Civ. P. 23(b)(3) incorporates a non-exhaustive list of factors to consider when determining a class action's "superiority":

> (A)    the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23 (b)(3).   The Supreme Court has emphasized individual accessibility to the judiciary when evaluating 23(b)(3)'s superiority requirement:

"'The interest [in individual control] can be high where the stake of each member bulks large and his will and ability to take care of himself are strong; the interest may be no more than theoretic where the individual stake is so small as to make a separate action impracticable.'" *Amchem*, 521 U.S. at 616. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem[.]" *Id*. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)); *see also Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 545 (6th Cir. 2010).

Here, many class members may not even know they have been wronged and may not even be in the country. However, even if class members did know of their claims or how to access the courts, any individual claims are relatively small if limited to statutory damages. Given the amounts at issue, no class member on their own would have a substantial interest in controlling this litigation. Indeed, no other putative class member has brought a similar action against Maroa Farms (or farm labor contractor to the parties' knowledge), and therefore, "there is no indication that any class member wants to individually control his or her own separate action." *Calloway v. Caraco Pharm. Labs., Ltd*., 287 F.R.D. 402, 408 (E.D. Mich. 2012). The alternative to a class action would therefore likely be no recovery at all. It follows that class treatment is superior to a series of individual actions.

## II.    THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT.

After certifying the settlement class as set forth in Section I, *supra*, the Court should preliminarily approve the settlement. The law favors compromise and settlement of class action suits. *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008) (quoting *UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007)). The procedure for review of a proposed class action settlement is a

well-established two-step process. First is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval."

Fed. R. Civ. 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." These factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

These requirements are easily met in this case. As discussed throughout, this case has been litigated for over a year, and class counsel has served as adequate class counsel. The class representatives have participated in discovery and Named Plaintiffs Ramona Reyes Saucedo and Oscar Carlos Lopez Ramirez both participated in the May 12, 2023 settlement conference, while Benjamin Lopez also participated through counsel, as was permitted by the Court. During the settlement conference, the settlement was negotiated at arm's length. Both sides were represented by counsel with Judge Green serving as the facilitator. The parties agreed to the key terms of the settlement, which were placed on the record. The settlement provides recovery for the putative class members that could exceed a per-class member amount awarded at trial, and it does so without additional delay and the uncertainty of litigation. Each class member, having allegedly sustained the same harm, will receive the same share of the settlement fund. Moreover, class counsel is not entitled to attorneys' fees under the terms of the settlement agreement. The administration of the class will be conducted by a neutral third-party, and the class notice, exclusion, and claim submission forms

are to be provided in English, Spanish, and Haitian Creole.

In addition to these requirements, the Sixth Circuit has also laid out its own factors to consider. These include: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members;[3] and (7) the public interest. *See UAW*, 497 F.3d at 631.

Here, there is no risk of fraud or collusion.  In fact, "[c]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. AvrinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008). The settlement was negotiated by counsel with the assistance of Judge Green as facilitator. The parties were in separate rooms and did not communicate directly with one another when negotiating the terms of the settlement.

Continued litigation poses a risk to Named Plaintiffs and the putative class members, as their claims rely in part on records maintained by third parties to this litigation that may or may not be favorable to the class members. Were the case to proceed, Defendants would continue to vigorously defend the case and contest class certification. As class certification is not guaranteed in this case, this settlement is favorable to putative class members.

The complexity and anticipated duration of litigation also support preliminary approval of the settlement. After nearly a year of litigation, depositions have yet to be taken, conditional certification of a class has yet to occur, expert discovery yet to occur beyond preliminary identification of witnesses, and there will likely be additional motion practice before reaching the summary judgment stage. Further

---

[3] Since Notice of the Settlement has not yet issued to a certified class, it is not possible to gauge the reaction of the class at this time.

discovery could reveal facts and information which may be unfavorable to either party. Settling the case now will ensure a prompter resolution of the case than continued litigation. That said, the parties have engaged in voluminous paper discovery and have facts sufficient to understand the issues and risks at stake to all parties if the case were to proceed to the summary judgment stage or proceed to trial. The efforts made by counsel on both sides throughout this litigation confirm that they are sufficiently well apprised to make an intelligent analysis of the proposed settlement.

"The judgment of the parties' counsel that the settlement is in the best interest of the settling parties "is entitled to significant weight, and supports the fairness of the class settlement." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) (quoting *UAW v. GM,* 2006 WL 891151, at *18). Here, counsel for both sides has agreed to the key terms of the settlement on the record.

The seventh and final UAW factor is "the public interest." UAW, 497 F.3d at 631. There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). As has been discussed, litigation in this case will be lengthy and risky. This is especially the case where, if a class member brought a suit on their own, they would be entitled to a relatively small award if limited to statutory damages. Thus, by avoiding complex class action litigation that can consume a court's time and money, the settlement furthers the public interest.

The Settlement also serves the public interest by furthering the objectives of AWPA. Again, AWPA was enacted to "assure necessary protections for migrant and seasonal agricultural workers." 29 U.S.C. § 1801. Moreover, AWPA expressly provides terms for bringing allegations of violations of the statute as class actions. 29 U.S.C. § 1854(e)(1)(C). It follows that the Legislature anticipated class treatment

of claims, and the public interest in furthered by the swift resolution of class claims of migrant and seasonal agricultural workers in particular.

In addition, the proposed service awards are reasonable.  The Parties jointly request that the Court preliminarily approve a service award of $6,000 to each of the Named Plaintiffs. Numerous courts have authorized incentive awards [as] efficacious ways of encouraging member of a class to become class representatives and rewarding individual efforts taken on behalf of the class. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).  In determining whether to approve incentive awards, courts in the Sixth Circuit have looked at the following factors:

(1) The action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.  *In re Sketchers Toning Shoe Prods. Liab. Litig.,* 2013 U.S. Dist. LEXIS 67441, 2013 WL 2010702, at *14 (quoting *Enter. Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 250 (S.D. Ohio 1991)).

Here, the Named Plaintiffs have been instrumental in working toward a classwide settlement, and have each spent many hours of their time, sometimes rearranging work and personal obligations, to respond to discovery requests, review facts, sign documents, attend meetings, and take phone calls related to the case. Therefore, the proposed service awards are reasonable. See, e.g., *Ross v. Jack Rabbit Servs., LLC*, 2016 U.S. Dist. LEXIS 173292, *13-15 (W.D. Kentucky 2016) (approving $15,000 award named plaintiffs); *Barnes v. Winking Lizard, Inc.*, 2019 U.S. Dist. LEXIS 65657, *18 (approving service payment of $7,500 to representative plaintiff); *McFarlin v. Word Enters., LLC*, 2020 U.S. Dist. LEXIS 154549, *7 (approving service awards of $10,000.00 and $5,000.00 to named

plaintiffs).

The requirements of Fed. R. Civ. P. 23 and the *UAW* factors are satisfied and weigh in favor of approval. Because the settlement on its face, is fair, reasonable, and adequate, and not a product of collusion, the Court should grant preliminary approval.

## III.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

Under Fed. R. Civ. P. 23, "a court that certifies a class must appoint counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed class counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). As discussed in Section I(D), *supra*, Named Plaintiff's counsel—proposed class counsel—has established that they are qualified and sufficient to serve as class counsel. Counsel are two well-known non-profit legal services organizations with a history of prosecuting cases on behalf of underprivileged and underrepresented groups. Both organizations have extensive experience representing agricultural workers, knowledge about federal employment law, and specifically the AWPA. The Court should therefore appoint Adam Jeffries and Anna Hill Galendez of the Michigan Immigrant Rights Center and Trent Taylor of Farmworker Justice as class counsel.

## IV.   THE PROPOSED FORM AND MANNER OF PROVIDING NOTICE TO THE CLASS COMPORT WITH RULE 23 AND DUE PROCESS CRITERIA.

Fed. R. Civ. P. 23(c)(2)(B) provides that "for any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the

circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Fed. R. Civ. P. 23(e)(1) similarly provides, "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1).  Notice is "adequate if it may be understood by the average class member."  Newberg on Class Actions, §11:53, at 167 (4th Ed. 2002).

The proposed settlement provides for a notice campaign reasonably tailored to the unique and particular circumstances of this case. The Settlement Administrator's address will be listed as the return addressee on the envelope of the notice packages to allow it to conduct skip traces on returned mail.

The class notice package will consist of a Class Notice, Exclusion Request, and Claim Submission forms in the manner attached as Exs. 2-4.  The class notice package will be provided in English, Spanish, and Haitian Creole.  The Class Notice will contain the information required by Fed. R. Civ. P. 23 in plain language and in an easy-to-follow format, as well as directions to obtain additional information about the case and a toll-free telephone number where class members can also obtain information or request that forms be sent to them.

The proposed class notice package will be mailed to the last known addresses provided by Defendants of putative class members, to the extent known.  The settlement administrator's address will be listed as the return addressee on the envelope of the notice packages to allow it to conduct skip traces on returned mail. Mailing notice to each member of a settlement class "who can be identified through reasonable effort" is presumptively reasonable and sufficient. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).  However, in identifying the "best notice practicable" courts are mindful of the circumstances of the case and the relevant class.  See *Guy v. Absopure Water Co., LLC,* 2023 U.S. Dist. LEXIS 41446, *1 (E.D.

Mich. 2023) (ordering Court-approved notice and reminder notice to putative class members via text message); see also *Nazih v. Café Istanbul of Columbus, LLC,* 2018 U.S. Dist. LEXIS 154283, *20 quoting *Irvine v. Destination Wild Dunes Mgmt., Inc.,* 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication.").  Here, the class consists of migrant and seasonal agricultural workers as defined by the AWPA who may be absent from their primary place of residence for extended periods of time, and often move frequently. Furthermore, permanent addresses may not be available for many class members. Accordingly, the parties agree that notice via text message, in addition to mail, is warranted to notify absent class members.   To that end, the class notice package will also be transmitted via text message to all class members whose names and phone numbers are known based on information provided by Defendants, with the option to return the claim form or exclusion form via mail, text, email, or fax with an electronic signature.

The settling parties propose to provide notice to the Settlement Class Members within twenty-one (21) days after entry of the Preliminary Approval Order. Defendants will provide the Settlement Administrator with a complete list of known class members and their name, last known address, Farm Labor Contractor (FLC), if any, by whom they were recruited, employed, or supplied, last known phone number, and last known email address within ten (10) days after Preliminary Approval is granted.

In the event that the Class Notice package is returned as undeliverable, the Settlement Administrator shall update the Class Member's address once consistent with its standard practice and, if necessary, shall re-mail the Class Notice to such

person.  If a Class Member receives a re-mailed Class Notice, the response Deadline to postmark or submit an Exclusion Form, Claim form, or an objection to the Settlement shall be extended by ten (10) calendar days from the original Response Deadline. The settlement administrator will also provide notice of the Settlement to the appropriate state and federal officials to the extent required by the Class Action Fairness Act, 28 U.S.C. § 1715.

The Parties propose the Notice attached in English as Exhibit 1 and the Notice Plan outlined in the table below. The Parties also attach a proposed Exclusion Form as Exhibit 2 and a proposed Claim form as Exhibit 3. The Notice is sufficient as required by the requirements above and Fed. R. Civ. P. 23(c)(1)(2).

| | |
|---|---|
| Payment of Settlement Payment | Thirty (30) days after signed version of settlement agreement filed with Court. |
| Submission of Names and Contact Information of Class Members to Settlement Administrator | Ten (10) days after Preliminary Approval |
| Notice, Exclusion Form, and Claim Form mailed to Class Members | Within twenty-one (21) days after Preliminary Approval. |
| Claim, exclusion, and objection period | Twenty-one (21) days following preliminary approval, a ninety (90) day claim, exclusion, and objection period commences. |
| Settlement Administrator discloses amounts to be distributed | Within twenty (20) days of the end of the claim, exclusion, and objection period. |
| Final Approval and Fairness hearing | Following claim, exclusion, and objection period. |

| Effective Date | The date of Final Approval or the date after Resolution of Appeals Regarding Final Approval |
|---|---|

The parties agree that this notice and claims process is designed to be effective in (1) getting actual notice to as many members of the putative class as possible, and (2) distributing settlement funds to as many of those workers as possible who do not exclude themselves from the settlement.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant this Unopposed Motion for Preliminary Approval of the Settlement and issue an Order that:

WHEREFORE, the Parties respectfully request that the Court enter an Order that:

1) Preliminarily approves the Proposed Settlement Agreement as fair, reasonable, and adequate to the class;

2) Certify a settlement class for claims brought pursuant to Fed. R. Civ. P. 23(b)(3), (e);

3) Preliminarily approve the Michigan Immigrant Rights Center and Farmworker Justice as class counsel for the Class;

4) Preliminarily approve the named Plaintiffs as the class representatives for the Class, and preliminarily approve a service award to each of them in the amount of $6,000;

5) Approve the form, contents, and method of notice to be given to the Class as set forth in the Settlement Agreement;

6) Designate Rust Consulting, Inc. as the settlement administrator ("Settlement Administrator") of the settlement and instruct the

Settlement Administrator to disseminate, in accordance with the terms of the Settlement Agreement and the Preliminary Approval Order, the settlement notice to the class;

7) Establish procedures and schedule deadlines for persons to object to the settlement, the Settlement Agreement and Schedule the Fairness Hearing;

8) Schedule deadlines for the filing of: (a) documents in support of entry of the Final Approval Order; (b) objections to the settlement, class certification, appointment of class counsel, and the approval of the representative Plaintiffs as the representatives of the class;

9) Provide that any timely objection to the settlement shall be heard and considered by the Court at Fairness Hearing.

Dated: July 20, 2023                                    Respectfully Submitted,

/s/ *Anna Hill Galendez*
MICHIGAN IMMIGRANT RIGHTS CENTER
Anna Hill Galendez (P78632)
Adam Jeffries (P69432)
350 E. Michigan Ave., Suite 315
Kalamazoo, MI 49007
ahill@michiganimmigrant.org
ajeffries@michiganimmigrant.org
(616) 600-9433

FARMWORKER JUSTICE
/s/*Trent R. Taylor*
Trent R. Taylor (OR Bar No. 196045)
1126 16th Street NW, Suite LL101
Washington, D.C. 20006
ttaylor@farmworkerjustice.org
(202) 293-5420
*Attorneys for Plaintiffs*

/s/ *Maria Fracassa Dwyer*
CLARK HILL PLC
Maria Fracassa Dwyer (P60946)
Hannah K. Reisdorff (P80101)
500 Woodward Avenue - Suite 3500
Detroit, Michigan 48226
mdwyer@clarkhill.com
hreisdorff@clarkhill.com
(313) 965-8300
*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE WITH L. Civ. R. 7.2(b)(i)</u>

This document complies with the limitation set forth in W.D. Mich. L. Civ. R 7.3(b)(i) because the brief contains 6,489 words, excluding parts of the brief exempted by Local Rule 7.3(b)(ii) and (c).  This word count was generated using Microsoft Word for Microsoft 365.

By: *<u>/s/ Hannah K. Reisdorff</u>*
Hannah K. Reisdorff