## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BENJAMIN LOPEZ, OSCAR CARLOS LOPEZ | § | |
| RAMIREZ, and RAMONA REYES SAUCEDO, | § | |
|    Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action |
| MASTRONARDI PRODUCE-USA, INC., and | § | No: 1:22-CV-00484 |
| MAROA FARMS, INC., | § | Hon. Robert J. Jonker |
|    Defendants. | § | Mag. Judge Phillip J. Green |

## BRIEF IN SUPPORT OF JOINT MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 23, the parties, having submitted Notice of the Class Action Settlement (preliminarily approved by this Court) to putative class members who have now had an opportunity to object, opt-in, or opt-out, hereby submit this Joint Motion seeking final approval of the Class Action Settlement Agreement and resolution of the remaining claims, Counts I-III, in Plaintiffs' Amended Complaint.  (ECF No. 9, PageID.164-171).[1] A Fairness Hearing is scheduled to be held on March 4, 2024, at 2:00 pm. (ECF No. 110, PageID.2044-2052).

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

Named Plaintiffs filed their original Complaint on June 1, 2022.  (ECF No. 1, PageID.1-41).   Plaintiffs brought class action claims alleging violations of the Agricultural Worker

---

[1] As set forth more fully *infra*, the Court declined to exercise supplement jurisdiction over Counts IV, V, VII, VIII, and IX of Named Plaintiffs' Amended Complaint and dismissed those Counts on September 13, 2022. (*See* ECF No. 13, PageID.286). Count VI of the Amended Complaint, brought by Plaintiff Reyes Saucedo, individually, concerned allegations involving the federal Fair Labor Standards Act and was resolved separately. (*See* ECF No. 111, PageID.2053-2054).

Protection Act ("AWPA'), Michigan Occupational Safety and Health Administration standards, breach of contract, and unjust enrichment as well as individual claims alleging violation of the Michigan Improved Workforce Opportunity Wage Act ("WOWA") and of the Fair Labor Standards Act ("FLSA") on behalf of Plaintiff Ramona Reyes Saucedo. (ECF No. 1, PageID.1-41). Defendants timely responded to the original Complaint.  (ECF No. 7, PageID.47-131). On August 17, 2022, Plaintiffs filed an Amended Complaint, adding claims of assault and battery. (ECF No. 9, PageID.137-180). Defendants timely responded to Plaintiffs' Amended Complaint. (ECF No. 10, PageID.181-274).

Following the Scheduling Conference held on September 12, 2022, the Court issued a Case Management Order dated September 13, 2022, which, among other things, declined to exercise supplemental jurisdiction over Counts IV, V, VII, VIII, and IX of Named Plaintiffs' Amended Complaint (the "state law claims") and dismissed those claims. (ECF No. 13, PageID.286).  This left Counts I-III of Plaintiffs' Amended Complaint alleging class violations of the AWPA. Count VI of the Amended Complaint, alleging violation of the FLSA brought by individual Plaintiff Reyes Saucedo only, also remained.

Following months of discovery, on May 12, 2023, the parties attended a Court-Ordered Settlement Conference held before Magistrate Judge Phillip Green. (ECF No. 45, PageID.944; ECF No. 86, PageID.1867). During the Settlement Conference, the parties agreed to the key terms of a class action settlement agreement, which were placed on the record. (ECF No. 86, PageID.1867). The Conference lasted from approximately 9:00 a.m. to 6:30 p.m.  (ECF No. 117, PageID.2105).

The parties reached agreement to resolve the pending claims concerning allegations that Defendants violated the AWPA by not: paying wages and bonuses when due, complying with

working arrangements, providing required information on check stubs, complying with pesticide use regulations, and making required written disclosures about the terms and conditions of employment, as well as by providing false and misleading information (the "Settlement"). (*See* 29 U.S.C. §§ 1821, 1822, 1831, 1832 and Amended Complaint, paragraphs 217, 225, 234, 239 (a)-(d)). The Settlement negotiated by the parties, with the assistance of Judge Green, contemplated a final resolution for the class allegations Counts I-III of Plaintiffs' Amended Complaint.  (ECF No. 9, PageID.164-171). The parties also resolved Count VI of the Amended Complaint - Plaintiff Reyes Saucedo's FLSA claim independently from the class claims. (ECF No. 104, PageID.2004-2012; ECF No. 111, PageID.2053-2054).

On July 20, 2023, the parties filed a Joint Motion for Class Certification and Preliminary Approval of the Class Settlement aimed at resolving Counts I-III of Plaintiffs' Amended Complaint which included, among other things, a copy of the Proposed Class Action Settlement Agreement (the "Settlement Agreement"), and a copy of the proposed notice to be sent to putative class members (collectively, the "Motion for Preliminary Approval").   (ECF No. 103, PageID.1942-1967; ECF 103-2, PageID.1970-1989; ECF No. 103-3, PageID.1990-1997). The Settlement Agreement provided, in part, that:

- Defendants would place a total of $160,000 in a settlement fund ("Settlement Fund") for class member claims of a pro rata share of the Settlement Fund not to exceed $400 per class member related to Count III and the alleged failure to provide information on pay statements related to piece-rate wages and bonus pay.

- After accounting for settlement administration costs, any remainder of the Settlement Fund would be divided among those class members who submitted a claim form on a pro rata share up to a maximum of $400.00.

- Any sums remaining after payment of the costs of administering the settlement and payment of the pro rata individual settlement distributions would revert back to the Defendants.

- Defendants would pay $6,000.00 to each of the three Named Plaintiffs (totaling $18,000) as a service award, in recognition of their significant efforts to pursue these claims on behalf of the Class Members, subject to court approval.

- Each party would cover its own attorney fees and costs for the class claims in the lawsuit.

The Settlement Agreement also provides for the manner in which the Settlement Fund dollars are to be distributed, as well as continued reporting by the third-party administrator regarding the administration and distribution of the Settlement.

On August 9, 2023, the Court held a hearing on the Motion for Preliminary Approval before the Honorable Judge Jonker and the Honorable Judge Phillip Green. (ECF No. 105, PageID.2013; ECF No. 108. PageID.2034-2042).  On August 14, 2023, the Court issued an Order granting preliminary approval of the Settlement and certifying the following class for settlement purposes:

> All non-H2A, migrant and seasonal crop care workers who worked at Maroa Farms, Inc., 270 N. Fillmore Road, Coldwater, MI at any time during the period from June 1, 2019, through August 14, 2023.  (ECF No. 108, PageID.2035).

On August 14, 2023, the Court issued an Amended Preliminarily Approval Order of Class Settlement ("Amended Order") approving the Settlement Agreement and certifying the above class for settlement purposes.  (ECF No. 110, PageID.2044-2052). Through the Amended Order the Court found that the requirements of Fed. R. Civ. P. 23(a) and (b)(3) were satisfied by the class definition set forth above. (ECF No. 110, PageID.2045).  The Amended Order also named Anna Hill Galendez and Adam Jeffries of Michigan Immigrant Rights Center as Class Counsel for purposes of implementing the Settlement and approved Rust Consulting, Inc. ("Rust") as Settlement Administrator. (ECF No. 110, PageID.2047).  In the Amended Order the Court also found that the distribution of the Notice described in the parties' proposal met the requirements of constitutional due process and Fed. R. Civ. P. 23(e) and that such Notice was the best practicable under the circumstances.  (ECF No. 110, PageID.2048).  The Court also approved the proposed Claim Form, proposed Exclusion Request Form, and proposed timeline for return of Claim Forms

and Exclusion Request Forms through the Amended Order.  (ECF No. 110, PageID.2049). On August 16, 2023, the Court issued an Order also naming Trent Taylor of Farmworker Justice as class counsel for purposes of effectuating the Settlement.   (ECF No. 112, PageID.2055-2056).

The Settlement Agreement provided for a notice campaign tailored to the circumstances of this case and this putative class which consists of migrant and seasonal agricultural workers who communicate in Spanish, English, and/or Haitian Creole. (Exhibit 1, Proposed Class Action Settlement Agreement, pps. 1-21).  Rust implemented the notice campaign per the terms of the Settlement Agreement.  (Exhibit 3, Declaration of Sara Schwermer-Sween, ¶¶ 1 – 25).

To effectuate notice, Rust, acting as Settlement Administrator, obtained a mailing address of Lopez v Maroa Settlement, c/o Rust Consulting, Inc. 8378, P.O. Box 2396, Faribault, Minnesota 55021- 9096 to receive Claim Forms, Exclusion Forms, objections, undeliverable Class Notices and other communications regarding the Settlement. (Exhibit 3, ¶ 4).  Rust obtained a toll-free telephone number of (866) 254-7322 for putative Class Members to call with questions regarding the Settlement with the option to communicate in English, Spanish, or Haitian Creole. (Exhibit 3, ¶5). Rust also obtained an email address of info@casolopezmaroa.com and facsimile number of (248) 733-6405 for receiving communications about the Settlement.  (Exhibit 3, ¶¶ 6, 7). The toll-free telephone number, email address, and facsimile number were included in the Class Notice. (Exhibit 3, ¶¶ 5, 6, 7).  Rust also obtained a website address of www.casolopezmaroa.com and set up a website for the Settlement accessible in English, Spanish, or Haitian Creole. (Exhibit 3, ¶¶ 7, 8). The website included the option to submit a Claim Form or Exclusion Form in English, Spanish, or Haitian Creole.  (Exhibit 3, ¶ 8). The website address was also included in the Class Notice. *Id*.

On or about August 24, 2023, Defendants' counsel provided Rust with an initial mailing list containing Class Member's names, last known addresses, phone numbers, and/or email

addresses, as available ("Initial Class List") in conformance with the Settlement Agreement. (Exhibit 3, ¶ 10). The Initial Class List contained data for 194 potential Class Members. *Id.* On September 1, 2023, the Settlement Administrator mailed notice packets in conformance with the Settlement Agreement to putative class members in English, Spanish, and Haitian Creole. (Exhibit 3, ¶ 12). On or about September 11, 2023, the Settlement Administrator sent text messages to each putative class member for whom a phone number was available in conformance with the Settlement Agreement.  (Exhibit 3, ¶ 13).

On multiple dates throughout the claims period, the parties provided Rust with additional mailing lists containing additional Class Member's names, last known addresses, phone numbers, and/or email addresses, as available ("Additional Class Members Lists").  (Exhibit 3, ¶ 14). To assist in the creation of these Additional Class Members Lists, counsel for Defendants reached out to the farm labor contractors whose employees were putative class members and requested that they send additional contact information for those employees. Plaintiffs' counsel also issued third party subpoenas to labor contractors Defendant Maroa Farms, Inc. had utilized to supply putative class members.  According to Rust, the Additional Class Members Lists contained data for 706 additional Class Members.  *Id*. The Settlement Administrator mailed and emailed (where possible) class notices to all additional Class Members upon receipt of the information.  *Id.* Text messages were also sent to the Additional Class Members whose phone number(s) appeared on the Additional Class Members Lists.  *Id*. Putative class members whose notice packets were returned as undeliverable were also mailed a new notice packet. (Exhibit 3, ¶ 17).

In the months before the Notice period closed, counsel for the parties, with support from Rust, engaged in additional efforts to reach additional putative class members and improve the response rate. These additional efforts by the Settlement Administrator and the parties went

beyond the notice campaign described in the Settlement Agreement which had previously determined by the Court as meeting the requirements of constitutional due process and Fed. R. Civ. P. 23(e).  (ECF No. 110, PageID. 2048).

Plaintiffs' counsel posted and circulated flyers with language mutually agreed to by the parties and copies of class notices in Spanish, English, and Haitian Creole to community partners and businesses in Coldwater, Michigan and surrounding communities. (ECF No. 118-1, PageID.2138).  Plaintiffs' counsel also shared the flyers and class notices with community partners who serve migrant and seasonal agricultural workers in other areas with geographic ties to the class. The flyers included information about the Settlement including the class action website address and the phone numbers for the Settlement Administrator and Class Counsel. Counsel for Defendants also emailed and mailed lists of putative class members and copies of the Notice, Opt-In, and Exclusion forms to the farm labor contractors with whom Defendants had current contracts and requested that these farm labor contractors circulate the Notice documents to their employees who were putative class members directly.

Consistent with the terms of the Settlement Agreement, on October 16, 2023, Rust deployed a text message reminder to all putative class members with phone numbers on file who had not yet responded.  (Exhibit 3, ¶ 15).  On October 30, 2023, Rust, with approval of counsel for all parties, also sent a reminder email to all putative class members with email addresses on file who had not yet responded.  (Exhibit 3, ¶ 16).

In November 2023, counsel for Plaintiffs posted flyers with language mutually agreed to by the parties to their website with links to the court approved claim form and exclusion form in English, Spanish, and Haitian Creole.  In November 2023, counsel for Plaintiffs posted and shared a graphic with language mutually agreed to by the parties to their social media in English, Spanish,

and Haitian Creole with information regarding the Settlement and how to obtain additional information regarding the Settlement.  (See ECF No. 121-1, PageID 2148).

On November 13, 2023, Defendants sent Class Action Fairness Act notices in conformance with the Amended Order and applicable law. (*See generally* Exhibit 2, Declaration of Lauren M. Smith, ¶¶ 1-8).  On November 30, 2023, the Notice period ended for most putative class members in conformance with the Amended Order and the Settlement Agreement.  (ECF No. 110, PageID.2050). As permitted by the Settlement Agreement, the Notice Period was extended by ten (10) calendar days for putative class members whose initial notice packets were returned as undeliverable.  (ECF No. 103-2, PageID.1981-1982).

On December 11, 2023, the Court issued an Order appointing Attorneys Gonzalo Peralta and Susan Reed from the Michigan Immigrant Rights Center as Class Counsel and substituting Attorney Madeline Flynn from Farmworker Justice as Class Counsel for Trent Taylor.  (ECF No. 132, PageID.2211-2212).

On or about December 21, 2023, Rust provided information showing that, among other things, Rust had received thirty-two (32) claim forms and no objections to the Settlement.  Rust later finalized this information into the document attached hereto as Exhibit 3.  (Exhibit 3, ¶¶ 19, 21).  Rust also informed the parties that Rust received one (1) exclusion request form. (Exhibit 3, ¶ 20).  The putative class member who returned the one (1) exclusion form also returned a claim form and ultimately revoked their exclusion form and confirmed to Rust that they intended to participate in the Settlement.  (Exhibit 3, ¶ 20). In sum, Rust did not receive any valid exclusion forms, nor did it receive any objections to the Settlement.  (Exhibit 3, ¶¶ 20, 21).

### III.    <u>LEGAL ARGUMENT</u>

**FINAL APPROVAL OF THE SETTLEMENT AGREEMENT IS APPROPRIATE.**

Fed. R. Civ. 23(e)(2) instructs that if a settlement proposal would bind class members, the Court may only approve the settlement proposal after finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. 23(e)(2) sets forth several factors for the Court to consider in determining if a settlement is "fair, reasonable, and adequate."  In addition, the Sixth Circuit has identified seven (7) factors for a Court to consider when deciding if a settlement should receive final approval as "fair, reasonable, and adequate." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

In its Amended Preliminary Approval Order, the Court preliminarily approved the terms of the Settlement Agreement as fair, reasonable, and accurate.  (ECF No. 110, Page ID.2046).  The parties jointly assert that the relevant factors to consider are satisfied and that final approval of the Settlement should be granted by the Court.

**A.  The Fed. R. Civ. 23(e)(2) factors support final approval.**

When deciding whether a settlement is fair, reasonable, and adequate of the Court considers whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

First and foremost, when preliminarily approving the Settlement Agreement, this Court noted, "[T]he Court preliminarily approves the Settlement Agreement and the settlement it embodies as fair, reasonable, and adequate" while noting that "the key terms of the Agreement reasonably reflect the potential risks and rewards that would accompany pursuing this litigation to trial" and explaining that the various payments to opt-in class members and Named Plaintiffs were fair. ECF No. 110, PageID.2046-47.

The class representatives and class counsel have adequately represented the class and will continue to do so.  This case was initially filed on June 1, 2022, and the parties engaged in voluminous and time-consuming discovery efforts, and Named Plaintiffs, through class counsel, participated in said discovery efforts. These efforts culminated in the settlement reached with the assistance of Magistrate Judge Green at the Settlement Conference held on May 12, 2023.  Named Plaintiffs Ramona Reyes Saucedo and Oscar Carlos Lopez Ramirez both participated in the Settlement Conference, while Benjamin Lopez also participated through counsel, as was permitted by the Court.  (ECF No. 77, PageID.1750-1751).

The Settlement was negotiated at arm's length. The parties reached the Settlement following an all-day settlement conference on May 12, 2023. All parties were represented by counsel, and Plaintiffs and Defendants (with their counsel) were placed in separate rooms with Judge Green serving as facilitator between the parties.

The relief provided for the class is adequate.  The Settlement provides recovery for the putative class members in the amount of $400.00 per class member who submitted a claim form, which could exceed a per-class member amount awarded at trial, and it does so without additional delay and the uncertainty of litigation.

Each class member who submitted a claim form will receive the same amount, $400.00, from the Settlement Fund. (Exhibit 3, ¶ 23). The administration of the Settlement will be conducted by Rust, which is experienced in handling and distributing class settlements. (Exhibit 3, ¶ 2). Considering both expenses already incurred, as well as costs associated with distribution of the settlement funds, Rust has estimated the total cost for the complete administration of this Settlement to be $40,000.00.  (Exhibit 3, ¶24).  Class counsel is not receiving attorneys' fees under the terms of the Settlement Agreement.  (ECF No. 103-2, PageID. 1978). As instructed by the Court, Rust provided Notice to the putative class members as defined in the Amended Order to the extent possible and in the manner set forth in the Settlement Agreement. (ECF No. 110, PageID. 2045; Exhibit 3, ¶ 9; Exhibit 3, Attachment A, pps. 6-34).

In addition, the proposed service awards in the amount of $6,000.00 are fair and reasonable. In determining whether to approve incentive awards, courts in the Sixth Circuit have considered the following factors: (1) The action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation. *In re Sketchers Toning Shoe Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 67441, 2013 WL 2010702, at *14 (quoting *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991)).  Here, the Named Plaintiffs have been instrumental in working towards the Settlement, which provides significant relief of $400.00 per opt-in class member.  Each Named Plaintiff has spent many hours of their time, sometimes rearranging work and personal obligations, to respond to discovery requests, review facts, sign documents, attend meetings, and take phone calls related to the case. Therefore, the proposed service awards are reasonable. *See,*

11

*e.g.*, *Ross v. Jack Rabbit Servs., LLC*, 2016 U.S. Dist. LEXIS 173292, *13-15 (W.D. Kentucky 2016) (approving $15,000 award to named plaintiffs); *Barnes v. Winking Lizard, Inc.*, 2019 U.S. Dist. LEXIS 65657, *18 (approving service payment of $7,500 to representative plaintiff); *McFarlin v. Word Enters., LLC*, 2020 U.S. Dist. LEXIS 154549, *7 (approving service awards of $10,000.00 and $5,000.00 to named plaintiffs).

**B.   The Sixth Circuit factors also support final approval.**

The Sixth Circuit set out additional factors to guide the Court's inquiry concerning whether a settlement is "fair, reasonable, and adequate."  These additional factors are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.  *UAW*, 497 F.3d at 631.; Fed. R. Civ. 23(e)(2).

The Court has wide discretion in assessing the weight and applicability of the factors to consider. *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-1206 (6th Cir. 1992).  The task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments...The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

Here, the Court preliminarily approved this Settlement as "fair, reasonable, and adequate," and the parties jointly assert that the settlement satisfies the above factors. (ECF No. 110, PageID.2046).  Accordingly, the Court should grant final approval of the Settlement Agreement.

**1.        The risk of fraud or collusion.**

Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.  *Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818, 838 (E.D. Mich.

2008).  Here, the Settlement was negotiated following a lengthy settlement conference with the assistance of Magistrate Judge Green.  The parties were represented by counsel throughout and were positioned in separate rooms during the settlement conference.  As the Court noted in its Amended Order, there is no indication of fraud or collusion on this record.  (ECF No. 110, PageID.2047).

### 2.    The complexity, expense, and likely duration of the litigation.

Counts I-III in the Amended Complaint alleged violations of multiple policies of Defendants and several alleged violations of the AWPA. Continued litigation poses risks and costs to both sides.  Continued litigation would necessarily involve expert discovery, depositions, and additional motion practice before reaching the summary judgment stage. Even if Plaintiffs were to succeed at trial, appeals could further delay meaningful relief. By contrast, the Settlement provides prompt resolution of the case without exposure to the ongoing risks or delays of litigation.  *Dick v. Sprint Commc'ns. Co. L.P.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014).

### 3.    The amount of discovery engaged in by the parties.

Prior to reaching settlement with the assistance of Magistrate Judge Green, the parties engaged in voluminous paper discovery.  The parties assert that they have facts sufficient to understand the issues and risks at stake to all parties if the case were to proceed to the summary judgment stage or proceed to trial. The efforts made by counsel on both sides throughout this litigation support that they are sufficiently well-apprised to make an intelligent analysis of the Settlement given the costs and risks of proceeding with litigation.

### 4.    The likelihood of success on the merits.

Plaintiffs believe they would likely ultimately prevail should they continue to litigate Counts I-III of the Amended Complaint.  Defendants assert that they would vigorously defend

themselves and are confident in their legal defenses.  It follows that there are legitimate legal and factual disagreements that this Settlement would resolve. *UAW*, 497 F.3d at 632.  The Settlement provides significant relief of $400.00 per opt-in class member, which could exceed the amount putative class members would receive through continued litigation, even if they were successful. *See Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411, at *51, 2010 WL 4136958, at *18 (E.D. Mich. 2010) (finding that the uncertainty, risk, hardship, and delay attendant to continued litigation and the potential that trial might leave class members with nothing favored final approval of class settlement).  Accordingly, this factor weighs in favor of final certification.

**5.      The opinions of class counsel and class representatives.**

The parties jointly move the Court for final approval of the Settlement.  "The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight and supports the fairness of the class settlement.'" *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) (quoting *UAW*, 2006 U.S. Dist. LEXIS 14890, at *57; 2006 WL 891151, at *18).  Here, both class counsel and counsel for Defendants assert that the settlement is fair, reasonable, and adequate, and the class representatives have indicated their respective support for the Settlement through submission of claim forms to participate in the class. Accordingly, this factor weighs in favor of granting final certification of the settlement.

**6.      The reaction of absent class members**.

Rust did not receive any objections to the Settlement.  (Exhibit 3, ¶ 21).  Rust only received one (1) exclusion request form; however, the individual who submitted the exclusion request also submitted a claim form and ultimately revoked their exclusion request. (Exhibit 3, ¶ 20). Accordingly, there are no valid exclusion requests.  (Exhibit 3, ¶¶ 20, 21).

Rust received 32 opt-in claim forms, which represents approximately 2.4% of the settlement class (32 claim forms / 1300 class members = 2.46%). Courts have found a 2% response rate acceptable in scenarios like this one where there were no objections to the settlement. *See Touhey v. United States*, No. EDCV 08-01418, 2011 LEXIS 81308, at *21; 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (finding a 2% response rate acceptable where there were 38 responses to 1,875 notices mailed and where there were no objections to an otherwise fair and reasonable recovery).

Courts have also granted final certification based solely on the objections and exclusion requests received. *See Dick*, 297 F.R.D. at 291 (concluding settlement adequate based on the small number of opt-outs and objections when no claims response data was otherwise available). Here, there were no objections and no valid exclusion requests. (Exhibit 3, ¶¶ 20, 21). Accordingly, this factor supports final approval of the settlement.

### 7.    The public interest.

The seventh factor is "the public interest." The Settlement serves the public interest by furthering the objectives of the AWPA. The AWPA was enacted to "assure necessary protections for migrant and seasonal agricultural workers." 29 U.S.C. § 1801. Moreover, the AWPA expressly provides terms for bringing allegations of violations of the statute as class actions. *See* 29 U.S.C. § 1854(e)(l)(C). It follows that the Legislature anticipated class treatment of claims, and the public interest in furthered by the swift resolution of class claims of migrant and seasonal agricultural workers in particular.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D.

Mich. 2003). As previously referenced, this litigation, if it were to proceed, could be lengthy and risky.  This is especially the case where, if a class member brought a suit on their own, they would be entitled to a relatively small award if limited to statutory damages, despite engaging in costly litigation. Thus, by avoiding complex class action litigation that can consume a court's time and money, the Settlement furthers the public interest.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant final approval of the Settlement.

Dated: February 15, 2024                    Respectfully Submitted,

MICHIGAN IMMIGRANT RIGHTS CENTER
/s/ Adam Jeffries
Adam Jeffries (P69432)
Anna Hill Galendez (P78632)
Gonzalo Peralta (P84529)
Susan Reed (P66950)
ajeffries@michiganimmigrant.org
ahill@michiganimmigrant.org
gperalta@michiganimmigrant.org
350 E. Michigan Ave, Suite 315
Kalamazoo, MI 49007
Telephone: (616) 600-9433
Facsimile: (616) 600-9433


FARMWORKER JUSTICE

/s/ Madeline Flynn
Madeline Flynn
District of Columbia Bar No. 90017739
mflynn@farmworkerjustice.org
1126 16th Street NW, Suite LL101
Washington, DC 20006
Telephone: (202) 800-2520
Facsimile: (202) 293-5427

*Plaintiffs' Counsel*

  /s/ Maria Fracassa Dwyer_____
CLARK HILL PLC
Maria Fracassa Dwyer (P60946)
Hannah K. Reisdorff (P80101)
500 Woodward Avenue - Suite 3500
Detroit, Michigan 48226
mdwyer@clarkhill.com
hreisdorff@clarkhill.com
(313) 965-8300

*Attorneys for Defendants*